# In the United States Court of Appeals for the District of Columbia Circuit

GREGORY T. ANGELO, TYLER YZAGUIRRE,
ROBERT M. MILLER, & CAMERON M. ERICKSON

*Plaintiffs-Appellants*,

v.

DISTRICT OF COLUMBIA; PAMELA A. SMITH, WASHINGTON
METROPOLITAN POLICE DEPARTMENT CHIEF; BRIAN L.
SCHWALB, DISTRICT OF COLUMBIA ATTORNEY GENERAL; &
MICHAEL ANZALLO, WASHINGTON METROPOLITAN TRANSIT
AUTHORITY POLICE DEPARTMENT CHIEF,

*Defendants-Appellees*,

## INITIAL BRIEF OF APPELLANTS

On Appeal from the United States District Court
for the District of Columbia (No. 1:22-cv-01878-RDM)

George L. Lyon, Jr.
BERGSTROM ATTORNEYS
1929 Biltmore
Street, NW
Washington, DC 20009
*gll@
bergstromattorneys.com*
(202) 669-0442 (phone)
(202) 483-9267 (fax)

Edward M. Wenger
HOLTZMAN VOGEL
BARAN TORCHINSKY &
JOSEFIAK, PLLC
2300 N Street NW
Suite 643
Washington, DC 20037
*emwenger@
holtzmanvogel.com*
(202) 737-8808 (phone)
(540) 341-8809 (fax)

Caleb Acker
HOLTZMAN VOGEL
BARAN TORCHINSKY &
JOSEFIAK, PLLC
15405 John
Marshall Highway
*cacker@
holtzmanvogel.com*
(540) 341-8808 (phone)
(540) 341-8809 (fax)

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE AS TO PARTIES, RULINGS & RELATED CASES

**Parties and Amici:** The Appellants, each of whom was a Plaintiff before the District Court, are Gregory T. Angelo, Tyler Yzaguirre, Robert M. Miller, and Cameron M. Erickson.

The Appellees, each of whom was a Defendant before the district court, are the District of Columbia; Washington, D.C. Metropolitan Police Department Chief Robert J. Contee, III; Washington, D.C. Attorney General Brian Schwalb; and Washington, D.C. Metropolitan Area Transit Police Chief Michael L. Anzallo.

The United States of America appeared as an interested party.

Amici before the district court included March for Our Lives Action Fund; the Giffords Law Center to Prevent Gun Violence; Brady; Team Enough; the State of Illinois; the State of California; the State of Colorado; the State of Connecticut; the State of Delaware; the State of Hawaii; the State of Maryland; the State of Massachusetts; the State of Minnesota; the State of New Jersey; the State of New York; the State of North Carolina; the State of Oregon; the State of Rhode Island; the State of Washington; and the Second Amendment Foundation.

**Rulings Under Review:** The ruling under review is the District Court's Memorandum Opinion dated August 9, 2024, J.A. 18, and Order, J.A. 17, which dismissed Plaintiffs' First Amended Complaint without prejudice. The District

Court's order is also reported at *Angelo v. District of Columbia*, No. 22-1878 (RDM), 2024 U.S. Dist. LEXIS 141669 (D.D.C. Aug. 9, 2024).

**Related Cases:** There are no related cases pending in this Court or before the U.S. District Court for the District of Columbia. Pending in the United States Court of Appeals for the Seventh Circuit is *Schoenthal v. Raoul*, Case No. 24-2643 (7th Cir.), which involves a similar Second Amendment challenge to a statute banning the carrying of firearms on public transit. There, the Illinois Attorney General challenged the plaintiffs' standing to maintain their Second Amendment challenge, but the United States District Court for the Northern District of Illinois resolved that question in favor of the plaintiffs. *See Schoenthal v. Raoul*, No. 3:22-cv-50326, 2024 U.S. Dist. LEXIS 156436, *9–13 (N.D. Ill. Aug. 30, 2024).

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS & RELATED CASES ....................i

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES................................................................iv

STATEMENT OF JURISDICTION ....................................................1

STATEMENT OF THE ISSUES .........................................................2

STATEMENT OF THE CASE & FACTS.............................................4

SUMMARY OF THE ARGUMENT ....................................................7

STANDARD OF REVIEW................................................................13

ARGUMENT ...................................................................................14

    I.     THIS CASE IS NOT CONTROLLED BY *NAVEGAR* OR *SEEGARS*....................14

        A.    *Navegar*'s holding was driven by the uncertainty-based injury necessarily alleged in the void-for-vagueness context. ............14

        B.    *Seegars* does not control this case either.................................19

    II.    *NAVEGAR* AND *SEEGARS* HAVE BEEN ABROGATED BY INTERVENING SUPREME COURT PRECEDENT. ...........................................................22

    III.    THE COURT SHOULD DISPENSE WITH *NAVEGAR* AND ITS PROGENY VIA AN *IRONS* FOOTNOTE. ...................................................................29

        A.    No other circuit in the Country restricts pre-enforcement challenges like this one...........................................................31

        B.    Judges of this Circuit have maintained that *Navegar* and *Seegars* should be corrected by the en banc Court....................40

        C.    *Navegar* and *Seegars* have interfered with the ability of this Court to enforce the Constitution's guarantees, creating a slew of perverse incentives along the way.........................................41

CONCLUSION ................................................................................44

CERTIFICATE OF COMPLIANCE ..................................................47

CERTIFICATE OF SERVICE............................................................48

STATUTORY ADDENDUM ..............................................................49

# TABLE OF AUTHORITIES[*]

**Cases**                                                                 **Page(s)**

*Abbott Lab'ys v. Gardner*,
   387 U.S. 136 (1967) ...................................................................37

*Angelo v. District of Columbia*,
   No. 22-1878 (RDM),
   2024 U.S. Dist. LEXIS 141669 (D.D.C. Aug. 9, 2024) ......................................43

*Antonyuk v. Chiumento*,
   89 F.4th 271 (2d Cir. 2023) .....................................................31, 33, 34

*Antonyuk v. James*,
   144 S. Ct. 2709 (2024) ...............................................................31

*Babbitt v. UFW Nat'l Union*,
   442 U.S. 289 (1979) ...........................................................10, 21, 23

*Bach v. Pataki*,
   289 F. Supp. 2d 217 (N.D.N.Y. 2003) .................................................32

*Bach v. Pataki*,
   408 F.3d 75 (2d Cir. 2005) .........................................................31, 32

*Consumer Data Indus. Ass'n v. King*,
   678 F.3d 898 (10th Cir. 2012) ...................................................10, 31, 37

*Dawson v. Scott*,
   50 F.3d 884 (11th Cir. 1995) .........................................................22

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ...............................................................19, 43

*Doe v. Bolton*,
   410 U.S. 179 (1973) ...............................................................10, 44

*Epperson v. Ark.*,
   393 U.S. 97 (1968) ...................................................................10

*Ezell v. City of Chi.*,
   651 F.3d 684 (7th Cir. 2011) .............................................10, 31, 35, 36

_____

[*] Authorities upon which we chiefly rely are marked with asterisks.

iv

*FEC v. Ted Cruz for Senate,
  596 U.S. 289 (2022) ....................................................................47

Free Enter. Fund v. Pub. Co. Acctg. Oversight Bd.,
  561 U.S. 477 (2010) ....................................................................45

Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.,
  344 F.3d 1288 (11th Cir. 2003) ..........................................22, 28

*GeorgiaCarry.Org, Inc v. Georgia,
  687 F.3d 1244 (11th Cir. 2012) ..................10, 31, 37, 38, 39

Hanson v. District of Columbia,
  671 F. Supp. 3d 1 (D.D.C. 2023) ..........................................8, 20

Haynesworth v. Miller,
  820 F.2d 1245 (D.C. Cir. 1987) ..........................................22, 28

Hedges v. Obama,
  724 F.3d 170 (2d Cir. 2013) ..............................................21, 27

Hejira Corp. v. MacFarlane,
  660 F.2d 1356 (10th Cir. 1981) ......................................31, 36, 37

High Ol' Times v. Busbee,
  673 F.2d 1225 (11th Cir. 1982) ..........................................44

Int'l Soc'y for Krishna Consciousness v. Lee,
  505 U.S. 672 (1992) ......................................................................7

*Irons v. Diamond,
  670 F.2d 265 (D.C. Cir. 1981) ..............................3, 11, 29, 30

Jackson v. City & Cnty. of S.F.,
  746 F.3d 953 (9th Cir. 2014) ..........................................10, 31, 36

Johnson v. Becerra,
  111 F.4th 1237 (D.C. Cir. 2024) ..........................................13

Kipke v. Moore,
  695 F. Supp. 3d 638 (D. Md. 2023) ..........................................31

Lee v. Int'l Soc'y for Krishna Consciousness,
  505 U.S. 830 (1992) ......................................................................7

v

*McDonald v. City of Chi.*,
　561 U.S. 742 (2010) ................................................................. 13, 26

*McMellon v. United States*,
　387 F.3d 329 (4th Cir. 2004) ............................................... 22

\*MedImmune, Inc. v. Genentech, Inc.*,
　549 U.S. 118 (2007) ........................................ 2, 3, 10, 24, 41, 45

*Miller v. Gammie*,
　335 F.3d 889 (9th Cir. 2003) ............................................... 22

\*Mobil Oil Corp. v. Att'y Gen. of Va.*,
　940 F.2d 73 (4th Cir. 1991) ..................................... 10, 31, 34

*N.H. Right to Life PAC v. Gardner*,
　99 F.3d 8 (1st Cir. 1996) ....................................................... 27

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
　597 U.S. 1 (2022) ........................................................... 4, 26

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*,
　804 F.3d 242 (2d Cir. 2015) ....................................... 10, 31, 32, 33

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*,
　990 F. Supp. 2d 349 (W.D.N.Y. 2013) ............................... 32, 33

\*Navegar, Inc. v. United States*,
　103 F.3d 994 (D.C. Cir. 1997) ....................... 2, 8, 14, 15, 16, 17, 19

*Ocean State Tactical, L.L.C. v. Rhode Island*,
　646 F. Supp. 3d 368 (D.R.I. 2022) ....................................... 31

\*Ord v. District of Columbia*,
　587 F.3d 1136 (D.C. Cir. 2009) ........................... 11, 12, 23, 41, 45

\*Parker v. District of Columbia*,
　478 F.3d 370 (D.C. Cir. 2007) ....................... 3, 5, 6, 8, 12, 20

*Peoples Rights Org. v. City of Columbus*,
　152 F.3d 522 (6th Cir. 1998) ..................................... 10, 31, 35

*Progressive Indus., Inc. v. United States*,
　888 F.3d 1248 (Fed. Cir. 2018) ........................................... 45

*Rocky Mt. Gun Owners v. Polis*,
 685 F. Supp. 3d 1033 (D. Colo. 2023) ................................................................31

*Schoenthal v. Raoul*,
 NO. 3:22-cv-50326,
 2024 U.S. Dist. LEXIS 156436 (N.D. Ill. Aug. 30, 2024) ...................................ii

*Seegars v. Ashcroft*,
 396 F.3d 1248 (D.C. Cir. 2005) ...........................2, 5, 8, 9, 11, 15, 19, 20, 35, 40

*Seegars v. Gonzales*,
 413 F.3d 1 (D.C. Cir. 2005) ..........................................................................20, 40

*Seegars v. SEC*,
 396 F.3d 1248 (D.C. Cir. 2005) .........................................................................18

*Soundboard Ass'n v. Fed. Trade Comm'n*,
 888 F.3d 1251 (D.C. Cir. 2018) .........................................................................45

*Steffel v. Thompson*,
 415 U.S. 452 (1974) ...........................................................................10, 20, 24

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014) .....................................................................2, 10, 23, 28, 39

*Union of Needletrades, Indus. & Textile Emps. v. INS*,
 336 F.3d 200 (2d Cir. 2003) ..............................................................................22

*United States v. Brown*,
 67 F.4th 200 (4th Cir. 2023) ..............................................................................22

*Valle Del Sol Inc. v. Whiting*,
 732 F.3d 1006 (9th Cir. 2013) .......................................................................31, 36

*Virginia v. Am. Booksellers Ass'n*,
 484 U.S. 383 (1988) .....................................................................................10, 27

*Whole Woman's Health v. Jackson*,
 595 U.S. 30 (2021) ...........................................................2, 9, 10, 25, 26, 27, 28

*Woodhull Freedom Found. v. United States*,
 948 F.3d 363 (D.C. Cir. 2020) ...........................................................................23

*Wrenn v. District of Columbia*,
 864 F.3d 650 (D.C. Cir. 2017) ...........................................................................43

**Statutes**

18 U.S.C. § 926B ..............................................................52

28 U.S.C. § 1292 ................................................................1

28 U.S.C. § 1331 ................................................................1

42 U.S.C. § 1983 ................................................................1

D.C. Code § 25-113 ..........................................................50

D.C. Code § 25-115 ..........................................................50

D.C. Code § 25-118 ..........................................................50

D.C. Code § 7-2501.01 ................................................45, 49

D.C. Code § 7-2502.03 ................................................45, 49

D.C. Code § 7-2509.07 ....................................4, 8, 18, 42, 45, 48

Tex. Health & Safety Code Ann. § 171.207 ......................26

Tex. Health & Safety Code Ann. § 7-2502.08 ..................49

Tex. Health & Safety Code Ann. § 7-2507.02 ..................49

Tex. Health & Safety Code Ann. § 7-2507.06 ..................49

Tex. Health & Safety Code Ann. § 7-2508.07 ..................49

Tex. Health & Safety Code Ann. § 7-2509.07 ..................45

**Other**

Fed. R. App. P. 27 ............................................................47

Fed. R. App. P. 32 ............................................................47

## STATEMENT OF JURISDICTION

Because Plaintiffs sued under 42 U.S.C. § 1983 to vindicate their federal constitutional rights, the district court had subject-matter jurisdiction under 28 U.S.C. § 1331. The district court dismissed Plaintiffs' First Amended Complaint on August 9, 2024. *See* J.A. 17, 18. On September 3, 2024, Plaintiffs filed a timely notice of appeal. *See* ECF No. 64. Accordingly, this Court has subject-matter jurisdiction under 28 U.S.C. § 1292(a)(1).

**STATEMENT OF THE ISSUES**

1.      In *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997), the Court found that the plaintiffs lacked standing to bring an uncertainty-laden, void-for vagueness pre-enforcement challenge, while in *Seegars v. Ashcroft*, 396 F.3d 1248 (D.C. Cir. 2005), the Court found that the plaintiffs lacked standing to bring a challenge to a firearms ban unless they first tried to register a firearm, a step that would not expose them to criminal liability. Here, the district court relied on *Navegar* and *Seegars* when it dismissed Plaintiffs' challenge, even though (1) there is no question what the challenged law requires, (2) there is no question that the District will prosecute them if they are caught breaking the challenged law, and (3) there is no question that, by the district court's lights, the sole way in which Plaintiffs may have standing to challenge the law requires them to risk arrest and prosecution. Did the district court err by relying on *Navegar* and *Seegars*?

2.      Since the Court decided *Navegar* and *Seegars*, the Supreme Court has held that "where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007); *accord Whole Woman's Health v. Jackson*, 595 U.S. 30, 35 (2021); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). The district court, applying the older *Navegar* line,

nonetheless required Plaintiffs here to show that they had been personally threatened with prosecution, "singled out[,] or uniquely targeted by the D.C. government for prosecution," *Parker v. District of Columbia*, 478 F.3d 370, 375 (2007), which necessarily means "expos[ing]" themselves "to liability before bringing suit," *MedImmune, Inc.*, 549 U.S. at 128–29. Did the district court err by declining to find that the *Navegar* line has been vitiated by intervening Supreme Court precedent?

3.      For decades, this Court has used an *Irons* Footnote to overrule precedent that, "due to an intervening Supreme Court decision, or the combined weight of authority from other circuits, a panel is convinced is clearly an incorrect statement of current law." Policy Statement on *En Banc* Endorsement of Panel Decisions at 1 (Jan. 17, 1996) (citing *Irons v. Diamond*, 670 F.2d 265, 267–68, 268 n.11 (D.C. Cir. 1981)). The Circuit's requirement that a plaintiff must show that he has been personally threatened with prosecution, "singled out[,] or uniquely targeted by the D.C. government for prosecution," *Parker*, 478 F.3d at 375, has been (at a minimum) called into question by intervening Supreme Court caselaw and runs counter to the precedent of *every* other circuit to have considered the issue. Should the Court use an *Irons* Footnote and overrule the *Navegar* line?

**STATEMENT OF THE CASE & FACTS**

Not long after the Supreme Court breathed new life into the Second Amendment, *see N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), Plaintiffs sued to enjoin a District of Columbia law providing that "[n]o person . . . shall carry a pistol in . . . [a] public transportation vehicle, including the Metrorail transit system and its stations," D.C. Code § 7-2509.07(a)(6) (the "Metro Ban"). To support their Article III standing, each Plaintiff submitted an affidavit averring that:

- "I hold a license to carry a concealed pistol issued by the D.C. Metropolitan Police Department."

- "I am loathe to break the law and would not do so intentionally."

- "I regularly ride the Metro subway and Metro buses."

- "I am aware of many instances of criminal violence occurring on the Metro system within the District of Columbia."

- "I am apprehensive for my safety while riding the Metro system."

- "I have in some circumstances avoided using the Metro system out of fear of my personal safety because I could not within the law carry my concealed firearm for personal protection."

- "If it were legal to do so, I would carry my concealed firearm on and within the Metro system for self-defense."

- "In sum, but for D.C. law, I would carry my concealed handgun on Metro trains and buses for self-defense. I do not do so now because I fear, among other things, arrest [and] prosecution."

J.A. 117–26. Despite their sworn statements, the District moved to dismiss, arguing that, under D.C. Circuit precedent, Plaintiffs lacked standing to bring a pre-enforcement challenge to the District's law because none had yet "been personally threatened with prosecution," "singled out[,] or uniquely targeted by the D.C. government for prosecution." Mem. in Supp. District Defs.' Mot. to Dismiss 5–6, ECF No. 44-1 (first quoting *Seegars v. Ashcroft*, 396 F.3d 1248, 1255 (D.C. Cir. 2005); then quoting *Parker v. District of Columbia*, 478 F.3d 370, 375 (D.C. Cir. 2007); also citing *Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997)).[1]

The district court agreed, and on August 9, 2024, it dismissed Plaintiffs' First Amended Complaint. J.A. 17. In the district court's view, it "remain[ed] bound by" what it perceived to be this Court's "admonitions that 'the District's general threat to prosecute violations of its gun laws d[oes] not constitute an Article III injury,'" and that a "'plaintiff bringing a pre[-]enforcement challenge must do more than show that the government enforces its laws as written.'" J.A. 27 (second alteration in original) (quoting *Parker*, 478 F.3d at 374). Because Plaintiffs opted to follow, rather

---

[1] Both *Seegars* and *Parker* followed the rule set out in *Navegar*, although the Court, in each, appeared skeptical that *Navegar* was correctly decided. *See Parker*, 478 F.3d at 374–75 ("We recognized in *Seegars* that our analysis in *Navegar* was in tension with the Supreme Court's treatment of a pre-enforcement challenge to a criminal statute that allegedly threatened constitutional rights. . . . Nevertheless, unless and until this court en banc overrules these recent precedents, we must be faithful to *Seegars* just as the majority in *Seegars* was faithful to *Navegar*."); *accord Seegars*, 396 F.3d at 1253–54.

than flout, the District's criminal laws, they had never "been singled out or uniquely targeted by the D.C. government for prosecution." *See Parker*, 478 F.3d at 375. For that reason alone, the district court considered itself bound to dismiss their complaint under Rule 12(b)(1).

The district court, however, recognized that the rule it found itself bound to apply seemed far out of step with pre-enforcement standing jurisprudence from the Supreme Court and every other circuit. It also acknowledged that the rule perversely slams shut the federal-courthouse doors to law-abiding gunowners, like Plaintiffs, who see the District's law as an affront to their fundamental Second Amendment rights but can do nothing about the law until they opt to break it. Finally, it observed that "multiple judges on the D.C. Circuit have raised substantial questions about the rule and have called for its reconsideration by the *en banc* court." J.A. 40. "But unless and until the Court of Appeals overrules" it, the district court "follow[ed] the rule." J.A. 40.

Plaintiffs timely noticed their appeal on September 3, 2024. ECF No. 64.

## SUMMARY OF THE ARGUMENT

If Plaintiffs wanted to bring a pre-enforcement challenge to a law prohibiting them from carrying *signs* while using public transit, this Court's precedent makes plain that they would have Article III standing to do so without first needing to break the law. *See, e.g.*, *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672 (1992); *Lee v. Int'l Soc'y for Krishna Consciousness*, 505 U.S. 830 (1992). But because they wish to avail themselves of their *Second* Amendment right instead of their *First* Amendment right, they must break the law; get caught breaking the law; find themselves threatened with arrest after breaking the law; hope that law enforcement decides not to arrest them even though they were caught breaking the law; and (assuming they're not immediately handcuffed and detained), *then* bring their pre-enforcement challenge.

If the Court's precedent actually requires Plaintiffs to traverse these steps to bring a Second Amendment pre-enforcement challenge to a District of Columbia law, then there is no longer any such thing as a Second Amendment pre-enforcement challenge to a District of Columbia law in this Circuit. Because that cannot be the law, the district court's Rule 12(b)(1) dismissal must be reversed. The Court can do so via one of three avenues.

**A.** First, and contrary to the district court's unenthusiastic conclusion, *Navegar* and *Seegars* do not control the outcome here. In *Navegar*, for instance, the

prosecutorial uncertainty was driven by the nature of the argument brought by the plaintiffs in that case—a void-for-vagueness challenge premised on the notion that the United States *might* someday aggressively *misapply* a poorly written statute, which rendered the potential injury asserted by the plaintiffs far more speculative because it turned on a murky question of statutory interpretation. 103 F.3d at 1001–02. Here, though, the law is clear: if Plaintiffs carry a pistol on public transit in the District, they have unquestionably broken the law, and in the normal course, they will be arrested if they are caught doing so. D.C. Code § 7-2509.07(a)(6).

*Seegars* is similarly distinguishable. In that case, a group of plaintiffs challenged interlocking District laws that (1) disallowed the possession of unregistered pistols and (2) forbade the registration of new pistols. 396 F.3d at 1250. Carrying an unregistered pistol brought criminal sanction, but trying (and failing) to register a pistol did not. There, no plaintiff had even tried to register a pistol, which diluted any claim of an actual injury in fact. *Id.* Indeed, in recent Second Amendment cases challenging bans on the possession of certain arms, courts of this Circuit have held (and the District has conceded) that trying, and failing, to register a weapon gives a plaintiff standing to bring a Second Amendment challenge.[2] But where, as

_____

[2] *See, e.g.*, *Parker*, 478 F.3d at 376; *Hanson v. District of Columbia*, 671 F. Supp. 3d 1, 8 (D.D.C. 2023), *aff'd Hanson v. Smith*, 120 F.4th 223 (D.C. Cir. 2024); *see also* Defs.' Combined Mot. to Dismiss at 11, *Yzaguirre v. District of Columbia*, No. 1:24-cv-01828-APM (D.D.C. Jan. 15, 2025), ECF No. 26 (the District, in a case challenging the District's so-called assault-weapons ban,

here, the choice is *solely* between risking criminal prosecution or acquiescing to an unconstitutional law, the Court can (and should) recognize that the declarations submitted by Plaintiffs here meet the irreducible constitutional minimum of Article III standing.

**B.** Second, the Court can (and should) conclude that intervening Supreme Court caselaw has abrogated *Navegar*'s wayward holding and *Seegars*'s perpetuation of it. As *Seegars* itself recognized, the *Navegar* rule treats First Amendment pre-enforcement challenges dissimilarly to other pre-enforcement challenges. *See* 396 F.3d at 1254; *see also id.* ("[T]he idea of a special First Amendment rule for pre[-]enforcement review of statutes seems to have no explicit grounding in Supreme Court decisions."). But since then, the Supreme Court has made crystal clear that courts must "consistently appl[y]" Article III standing "requirements whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, *the right to bear arms*, or *any other right*." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 50 (2021) (emphases added).

Because this Court's precedent imposes an arbitrarily higher burden on plaintiffs with non-First Amendment, pre-enforcement constitutional challenges, it

---

conceding that the plaintiff has standing because the "denial of a registration certificate creates an injury-in-fact 'to which the stringent requirements for pre-enforcement standing under *Navegar* and *Seegars* would not apply'" (quoting *Parker*, 478 F.3d at 376)).

cannot be squared with more recent (and for that matter, more dated) Supreme Court precedent.[3] It is also far out of step with sister-circuit precedent,[4] as well as the fundamental-fairness principle that no person should have to subject himself to criminal sanction before arguing that a statute transgresses our Nation's charter.[5] For that reason, the Court can (and should) find that the *Navegar* line has been abrogated by the Supreme Court.

**C.** Finally, should the Court find itself reluctant to conclude that the Supreme Court has nullified the *Navegar* line, it should take it upon itself to revisit *Navegar* and its progeny by way of an *Irons* Footnote. Litigants (like Plaintiffs did below) routinely argue that the crabbed view of standing to which the district court

---

[3] *See Whole Woman's Health*, 595 U.S. 30; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007); *see also Virginia v. American Booksellers Ass'n*, 484 U.S. 383 (1988); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979); *Doe v. Bolton*, 410 U.S. 179 (1973); *Epperson v. Arkansas*, 393 U.S. 97 (1968).

[4] *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015); *Mobil Oil Corp. v. Attorney Gen. of Va.*, 940 F.2d 73 (4th Cir. 1991); *Peoples Rights Organization, Inc. v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011); *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014); *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898 (10th Cir. 2012); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012).

[5] *See Steffel v. Thompson*, 415 U.S. 452, 462 (1974) ("[A] refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding.").

considered itself bound cannot square with Supreme Court precedent (or the precedent of any other circuit). And at least four of this Court's jurists have pointed out the "sharp tension" between this Circuit's Article III precedent in non-First Amendment cases and the "standard rules governing pre[-]enforcement challenges." *See, e.g.*, *Seegars*, 396 F.3d at 1253, 1254, 1257. Several have previously cast votes for correcting this issue en banc.[6] Indeed, Judge Moss suggested as much as he reasoned his way to dismissing Plaintiffs' complaint here.[7] Given the "intervening Supreme Court decision[s]" discussed both *infra* and *supra*, and "the combined weight of authority from other circuits," the *Navegar* line is "clearly an incorrect statement of current law" and should be expunged from this Court's precedent. *See* Policy Statement on *En Banc* Endorsement of Panel Decisions at 1 (Jan. 17, 1996) (citing *Irons v. Diamond*, 670 F.2d 265, 267–68, 268 n.11 (D.C. Cir. 1981)).[8]

---

[6] *Ord v. District of Columbia*, 587 F.3d 1136, 1146 (D.C. Cir. 2009) (Brown, J., dissenting in part) ("[T]his controversy demonstrates why litigants should not be required to jump through such hoops to get past the courthouse door. . . . I do think the en banc court can and should rehear this appeal *sua sponte* and overrule *Navegar*.").

[7] *See* J.A. 139 ("I mean, I have to say, I understand your argument on standing, and I think that there is some force to the argument. But it seems to me to be arguments that the D.C. Circuit has two, three, four times considered and said yeah, there's considerable force to that argument, but our circuit precedent is to the contrary, and unless we go en banc, we can't accept that. I certainly can't do more than the panel of the D.C. Circuit could do. If the panels of the D.C. Circuit are bound, I'm certainly bound.").

[8] *Available at* https://www.cadc.uscourts.gov/sites/cadc/files/rules-IRONS. PDF.

\*    \*    \*

However the Court decides to approach this issue, it cries out for correction. If it remains true in this Circuit that a plaintiff bringing a non-First Amendment pre-enforcement challenge to a criminal statute must show that he has "been singled out or uniquely targeted by the D.C. government for prosecution," *Parker*, 478 F.3d at 375 (referencing *Seegars*, 396 F.3d 1248; *Navegar*, 103 F.3d 994), then this Circuit has, in every meaningful way, abolished non-First Amendment pre-enforcement challenges to criminal statutes. "Uniquely targeted for prosecution" means a person must break the law, law enforcement must know that the person has broken the law, law enforcement must take some action indicating that they intend to prosecute that person for breaking the law, and then law enforcement must decline to effectuate the arrest. The *only* difference, then, between a pre-enforcement challenge and a post-arrest challenge in this Circuit is the discretion of a law-enforcement officer with probable cause to make an arrest.[9]

This untenable scenario not only runs counter to fifty-years of Supreme Court standing jurisprudence, but it also diminishes the Second Amendment, vis-à-vis the First, to a "second-class right, subject to an entirely different body of rules." *N.Y.*

---

[9] *See Ord*, 587 F.3d at 1152 (Brown, J., dissenting in part) ("A prosecution is unlikely to be imminent if individuals refrain from violating the law out of fear of prosecution.").

*State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 70 (2022) (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality opinion)). It creates two perverse incentives: for otherwise law-abiding Second Amendment supporters, it encourages them to break the law; and for the District, it emboldens it to pass laws that trample over the Second Amendment, decline to enforce them, rely on the chilling effect the laws have on law-abiding gun owners, and then (as here) argue to a federal court that the courts have no power to remedy the District's unabashed affront to our Nation's charter.[10] It should be corrected, and now is the time.

## STANDARD OF REVIEW

The Court reviews de novo a Rule 12(b)(1) dismissal for lack of subject-matter jurisdiction. *Johnson v. Becerra*, 111 F.4th 1237, 1243 (D.C. Cir. 2024) (citing *Jibril v. Mayorkas*, 101 F.4th 857, 865 (D.C. Cir. 2024)).

---

[10] This is not a hypothetical or hyperbolic concern. Instead, it is precisely the cynical approach that the District deployed before the district court in this case: "First, Your Honor discussed the question of whether the Metropolitan Police Department or the WMATA police force have ever enforced this law. I would note first that there is no evidence in the record as to that point regardless of what counsel has to say." J.A. 144.

# ARGUMENT

## I.   THIS CASE IS NOT CONTROLLED BY *NAVEGAR* OR *SEEGARS*.

To resolve this case for Plaintiffs, the Court need not (though perhaps it still should, given its "tension" with Supreme Court precedent, *see infra*), disturb *Navegar* and its progeny. Applied faithfully, the *Navegar* line does not control the outcome here. The district court's contrary conclusion should be reversed. *See* Pls.' Opp'n Mot. to Dismiss 25–27, ECF No. 46 (Apr. 24, 2023).

### A.   *Navegar*'s holding was driven by the uncertainty-based injury necessarily alleged in the void-for-vagueness context.

**1.** In *Navegar*, firearm manufacturers brought a pre-enforcement challenge against a federal law prohibiting the manufacture, transfer, or possession of certain semiautomatic firearms. 103 F.3d at 996. The Act explicitly listed certain banned firearms made solely by certain companies, and it also listed several gun features that could render a firearm illegal. *Id.* at 997. For the latter restriction, if a firearm had two of five specified features, it was prohibited. *Id.* After visits from the ATF, the *Navegar* plaintiffs "ceased the manufacture and transfer of the outlawed weapons" and "expressed no intention to violate the Act in the future." *Id.* Rather than risk criminal sanction, the *Navegar* plaintiffs sued, arguing that the Act exceeded Congress's delegated powers, was an unconstitutional bill of attainder, and was void for vagueness. *Id.* at 996.

The Court held that, because the *Navegar* plaintiffs' "enumerated powers challenge [and] Bill of Attainder claims[] involve[d] portions of the Act that single[d] out specific weapons manufactured only by the" plaintiffs, the plaintiffs had standing to advance those claims. *Id*. at 999–1000. In the Court's view, because the plaintiffs were the only manufactures to make those specific firearms, the "Act in effect single[d] [them] out." *Id*. at 1000. "[F]or those weapons," this Court reasoned, "the threat of prosecution could be deemed speculative 'only if it is likely that the government may simply decline to enforce these provisions at all.'" *Seegars*, 396 F.3d at 1253 (quoting and discussing *Navegar*, 103 F.3d at 1000). So far, so good.

Critically, the *Navegar* Court considered—and based on the same concerns Plaintiffs raise here, rejected—a stricter pre-enforcement standing rule, one that is *no different* from the rule the district court applied here: i.e., "we're not yet arresting people for violating this law, so you can't challenge it."[11] *See* 103 F.3d at 999–1001. In response, the *Navegar* Court quipped: "To imagine that the government would conduct itself in so chimerical a fashion would be to declare in effect that federal courts may never, in the absence of an explicit verbal 'threat,' decide pre[-]enforcement challenges to criminal statutes." *Id*. at 1000. And to be certain,

---

[11] As noted above, this is the precise reasoning on which the District relied when pressed by the district court. *See supra* n.10.

*Navegar* emphasized that "[t]his has *never* been the law." *Id.* (emphasis added). Instead, the *Navegar* Court correctly observed that "[t]o require litigants . . . to violate the law and subject themselves to criminal prosecution before their challenges may be heard would create incentives that are perverse from the perspective of law enforcement, unfair to the litigants, and totally unrelated to the constitutional or prudential concerns underlying the doctrine of justiciability." *Id.* at 1000–01.

**2.** The harder question for the *Navegar* Court was whether the Act's list of firearms *features* created an imminent risk of injuring the plaintiffs. The plaintiffs' primary argument was that "provisions that outlaw firearms 'known as . . . revolving cylinder shotguns' and semiautomatic pistols that have two out of five listed characteristics" failed the Due Process Clause's void-for-vagueness doctrine.[12] For purposes of this argument, the Court declined to find that "a genuine threat of enforcement ha[d] given rise to the requisite 'injury in fact.'" *Id.* at 1001.

*Navegar*'s conclusion, however, was driven by the uniquely murky nature of void-for-vagueness challenges. According to the Court, "because the general nature

---

[12] *Navegar*, 103 F.3d at 1001 (citation omitted). The *Navegar* Court also concluded that the plaintiffs lacked standing to maintain their "second enumerated powers claim," which "challenge[d] the portion of the Act outlawing 'large capacity ammunition feeding devices.'" *Id.* The Court did not specifically address why it concluded that the plaintiffs lacked standing to maintain this claim, but it is distinguishable for the same reason as *Seegars. See infra.*

of the language in these portions of the Act makes it impossible to foretell precisely how these provisions *may be applied*, the issues presented in these challenges are less fit for adjudication, suggesting additional concerns as to their ripeness." *Id.* (emphasis added). Because the Court could find the Act "impermissibly vague on its face only if [it] conclude[d] that" the Act was "capable of no valid application," the "absence of an enforcement action either commenced or specifically threatened" meant there existed "no actual or imminent concrete application of the statute in which to anchor [the Court's] inquiry into whether any valid application is possible." *Id.* at 1001–02.

In other words, the *Navegar* plaintiffs had argued that law enforcement may (or may not) *interpret* the Act in a way that would subject them to criminal liability for manufacturing certain firearms, and the uncertainty about whether they were in fact violating the Act was what transgressed their due process rights. But because it remained speculative whether (1) law enforcement would *interpret* the Act in a way that would sweep them under its umbrella, and even if it did, (2) law enforcement may still decline to *enforce* its new interpretation of the Act against them, this conjectural stack attenuated the argument that the *Navegar* plaintiffs were at risk of being punished for violating the law. And even though Plaintiffs here maintain that *Navegar* was wrongly decided and should be scuttled, *see infra*, there is arguably much more tension between the unique injury inflicted by a facial void-for-

vagueness violation (i.e., uncertainly *is* the alleged constitutional violation) and the Article III credible-threat requirement for pre-enforcement challenges.

Viewing *Navegar* through this lens is proof positive that it does not control the outcome here.[13] In stark contrast to the Act in *Navegar*, the law that Plaintiffs wish to challenge cannot be misunderstood: "[n]o person . . . shall carry a pistol" in "[a] public transportation vehicle, including the Metrorail transit system and its stations." D.C. Code § 7-2509.07(a)(6). Anyone who gets caught doing so is a criminal. Each Plaintiff would carry a firearm on the Metro but for the law. At bottom, their choice is binary: either forgo what they believe is constitutionally protected activity or violate a criminal law and hope the District declines to punish them for it.

Even the *Navegar* Court found this situation entirely untenable. There, the Court clarified that "[a] credible threat of imminent prosecution can injure the threatened party by putting her between a rock and a hard place—absent the availability of pre[-]enforcement review, she must either forego possibly lawful

---

[13] Judge Sentelle, in his *Seegars* dissent, agreed: "While I acknowledge that the majority is correct that *Navegar* can be read as controlling the case before us and barring standing, I think it is distinguishable. The allegedly constitutionally protected conduct in the record before us is clearly defined and clearly unlawful under a statute that the District apparently enforces regularly, and under which there is certainly no doubt that plaintiffs reasonably apprehend enforcement. I would therefore find the line of cases represented by *American Booksellers*, rather than *Navegar*, controlling." 396 F.3d at 1258 (Sentelle, J., dissenting).

activity because of her well-founded fear of prosecution, or willfully violate the statute, thereby subjecting herself to criminal prosecution and punishment." 103 F.3d at 998 (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298–99 (1979)). And the *Navegar* court made clear that it was not creating a hard-and-fast rule, but instead reached its holding based on the unique nature of the claims advanced by the *Navegar* plaintiffs: "The question of whether a threat of prosecution adequate to satisfy the requirements of justiciability is present in any particular pre[-]enforcement challenge is a factual and case-specific one." *Id.* at 999. On its terms, then, *Navegar* is distinguishable, and the Court should take this opportunity to corral that holding to the unique circumstances of that case.

**B.    *Seegars* does not control this case either.**

Nearly ten years after *Navegar*, the Court decided *Seegars*, a case that involved a Second Amendment pre-enforcement challenge to the D.C. handgun ban (the same one that this Court struck down in *Parker*, which in turn led to the Supreme Court's watershed *Heller* decision, *see District of Columbia v. Heller*, 554 U.S. 570 (2008)). "No plaintiff in" *Seegars* had "been arrested and prosecuted for violating the disputed provisions of the Code, so plaintiffs' case constitute[d] a 'pre[-]enforcement' challenge." 396 F.3d at 1251. After acknowledging "that *Navegar*'s analysis is in sharp tension with standard rules governing pre[-]enforcement challenges to agency regulations," *id.* at 1253, and with the Circuit's "cases

upholding pre[-]enforcement review of First Amendment challenges to criminal statutes," *id.* at 1254, the *Seegars* Court nonetheless applied *Navegar* and held that the *Seegars* plaintiffs lacked standing. *Id.* at 1255–56.

Although we maintain that *Seegars*, like *Navegar*, was wrongly decided and should be explicitly abrogated, *see infra*, it still does not control the outcome here. Fundamentally, pre-enforcement challenges exist to avoid a situation where a "hapless plaintiff" finds himself thrust "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel v. Thompson*, 415 U.S. 452, 462 (1974). And in *Seegars* (as with most cases challenging a District law banning possession of a particular arm), the plaintiffs there had a readily available avenue for seeking relief without risking criminal prosecution—they could have applied to register a banned firearm and then challenged the subsequent denial.[14] *See Seegars v. Gonzales*, 413 F.3d 1, 1–2 (D.C. Cir. 2005) (Ginsburg, C.J., concurring in the denial of rehearing en banc). In contrast,

_____

[14] Dick Heller followed this course in overturning the District's unconstitutional handgun ban, which makes *Parker* distinguishable as well. *See* 478 F.3d at 375–76. It is also why the plaintiffs in *Hanson v. District of Columbia*, 671 F. Supp. 3d 1, 8 (D.D.C. 2023), and the plaintiff in *Yzaguirre v. District of Columbia*, No. 1:24-cv-1828 (D.D.C.), unquestionably have standing to challenge, respectively, the District's magazine-capacity cap and its so-called "assault-weapons" ban.

Plaintiffs here have no other avenue—they remain the "hapless plaintiff[s]" who must either acquiesce or risk criminal sanction.

This distinction matters. In *Babbitt*, the Supreme Court stressed that plaintiffs "'should not be required to await and undergo a criminal prosecution as *the sole means of seeking relief*,'" 442 U.S. at 298 (emphasis supplied) (quoting *Doe v. Bolton*, 410 U.S. 179, 188)), and in *Seegars*, risking criminal prosecution was not the "sole means" of advancing their Second Amendment challenges. For Plaintiffs here, they do not have this alternative route; under this Circuit's precedent, risking criminal prosecution is indeed *their sole* means of seeking relief. That is why, in circumstances like those here, the Supreme Court has emphasized that pre-enforcement-challenge plaintiffs need only show a "credible threat of prosecution," which exists "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative." *Babbitt*, 442 U.S. at 298, 302. And where, as here, (1) the government has not disclaimed prosecution and (2) the statute has not fallen into disuse, *see Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013), standing exists.

\*　　\*　　\*

For these reasons, the district court erred by finding that *Navegar* and *Seegars* control this case, and the Court should reverse the district court's Rule 12(b)(1) dismissal.

21

## II. *Navegar* and *Seegars* have been abrogated by intervening Supreme Court precedent.

If the Court concludes that neither *Navegar* nor *Seegars* can be limited to their unique facts, then we respectfully request that, given intervening Supreme Court opinions, the Court should acknowledge that *Navegar* and *Seegers* are no longer good law.[15] Simply put, the Supreme Court (and every other federal circuit court of appeals, *see infra*), has made unmistakable and uncontroversial the notion that a plaintiff has Article III standing to bring a pre-enforcement challenge to a constitutionally suspect criminal statute if she is exposed to a "credible" threat of

---

[15] *See, e.g.*, *McMellon v. United States*, 387 F.3d 329, 332–33 (4th Cir. 2004) (en banc) (recognizing that "one panel cannot overrule a decision issued by another panel" but that one panel may conclude that the prior decision is no longer binding because it "has been overruled by an intervening opinion from . . . the Supreme Court"); *United States v. Brown*, 67 F.4th 200, 208–15 (4th Cir. 2023) (examining intervening Supreme Court decisions to determine whether they overruled or narrowed the court's earlier holding); *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) (adopting an approach that directs three-judge panels to reconsider both panel and en banc decisions that would otherwise be binding precedent when those decisions are "clearly irreconcilable with the reasoning or theory of intervening higher authority"); *Union of Needletrades, Indus. & Textile Emps. v. INS*, 336 F.3d 200, 210 (2d Cir. 2003) (holding that Second Circuit panels may overrule decisions of prior panels "where there has been an intervening Supreme Court decision that casts doubt on our controlling precedent"); *Dawson v. Scott*, 50 F.3d 884, 892 n.20 (11th Cir. 1995) (allowing panel review when a case "appears to be overruled"); *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003) (recognizing a "clearly on point" "intervening decision of the Supreme Court can overrule the decision of a prior panel of our court"); *Haynesworth v. Miller*, 820 F.2d 1245, 1260–61 (D.C. Cir. 1987) (reevaluating a prior decision by the court after "subsequent decisions of the Supreme Court and other circuits" gave "reason to question its continuing vitality").

criminal prosecution—full stop. *Babbitt*, 442 U.S. at 298.[16] According to the district court here, however, the rule in this Circuit (and *only* this Circuit) is that "[i]t is *not* enough to allege facts demonstrating a 'credible' threat of prosecution." J.A. 26 (emphasis added). Instead, a "plaintiff bringing a non-First Amendment pre[-]enforcement challenge to a criminal statute must also allege facts sufficient to permit a plausible inference that the threat of criminal or civil enforcement is 'imminent,'"—i.e., that she has been "'singled out or uniquely targeted by the D.C. government for prosecution.'" J.A. 26.

The obvious bears repeating. This added hurdle means that plaintiffs within this Circuit have no avenue for challenging constitutionally suspect criminal statutes without first risking arrest and prosecution. To be singled out for enforcement or threatened with arrest means that Plaintiffs must actually break the law they wish to challenge; otherwise, there can exist no "imminent" threat of *prosecution*.[17] For the past fifty years, the Supreme Court has explicitly disclaimed the practice of thrusting a "hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in

---

[16] *See also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *Woodhull Freedom Found. v. United States*, 948 F.3d 363, 372–73 (D.C. Cir. 2020).

[17] *See Ord*, 587 F.3d at 1152 (Brown, J., dissenting in part) ("A prosecution is unlikely to be imminent if individuals refrain from violating the law out of fear of prosecution.").

order to avoid becoming enmeshed in a criminal proceeding." *Steffel*, 415 U.S. at 462. Adding another hurdle (like this Circuit has here) pushes the rule further toward a true "bet the farm" prerequisite. *See MedImmune, Inc.*, 549 U.S. 129. Indeed, "[w]ere the law to be that a plaintiff could not obtain a declaratory judgment that a local ordinance was unconstitutional when no state prosecution is pending . . . , the Federal Declaratory Judgment Act would have been *pro tanto* repealed." *Steffel*, 415 U.S. at 471.

Since this Court decided *Navegar* and *Seegars*, the Supreme Court has repeatedly weighed in on the pre-enforcement standing doctrine. Two years after *Seegars*, the Supreme Court decided *MedImmune, Inc. v. Genentech, Inc.*, a case in which the Court held that, "where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." 549 U.S. 118, 128–29 (2007). Critically, and in stark contrast with the *Navegar* line, the Supreme Court made plain that "[t]he plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless *does not* eliminate Article III jurisdiction." *Id.* (emphasis added). After citing caselaw that (as of today) is over a century old, the Court reasoned that "putting the challenger to the choice between abandoning his rights or risking prosecution is 'a dilemma that . . . was the very purpose of the

Declaratory Judgment Act to ameliorate.'" *Id.* at 129 (citing *Terrace v. Thompson*, 263 U.S. 197 (1923) and quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152 (1967)).

In earlier stages of this case (and others), the District has argued that *MedImmune*, *Babbitt*, *Steffel*, and the like do not apply because they involved First Amendment pre-enforcement challenges. Why the District thinks this distinction matters remains a mystery, but in any event, the Supreme Court has since explicitly dispensed with this distinction. In *Whole Woman's Health v. Jackson*, the Court took up a pre-enforcement challenge to a Texas statute allowing a private cause of action against certain abortion providers. 595 U.S. 30, 35 (2021). Even though the state defendants in that case were explicitly deprived of enforcement authority by the challenged statute, eight members of the Court agreed that the plaintiffs had standing to advance their pre-enforcement challenge.[18]

In so doing, the Court considered, and rejected, any suggestion that the strictures for a pre-enforcement challenge vary depending on type of constitutional

_____

[18] The district court minimized the significance of *Whole Woman's Health*, stating, "the paragraph that Plaintiffs quote from Justice Gorsuch's opinion, comes from a portion of the opinion, Part II-C, which failed to command a majority." J.A. 32. This was error. As the Chief Justice's concurrence and partial dissent for himself and four other members of the Court makes clear, "eight Members of the Court agree[d]" that "petitioners may bring a pre-enforcement suit challenging the Texas law in federal court under *Ex parte Young*." 595 U.S. at 59–60 (Roberts, C.J., concurring in the judgment in part and dissenting in part).

challenge advanced. In no uncertain terms, the Court made clear that it "has consistently applied these [standing] requirements whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right." *Id.* at 50. That proclamation, in turn, is consistent with *Bruen*'s explicit warning that "[t]he constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 70 (2022) (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality opinion)).

And to be certain, *Whole Woman's Health* clarified that the Article III pre-enforcement challenge standard is not a high bar. The plaintiffs in that case sued state officials to enjoin them from enforcing the statute. 595 U.S. at 36–37. Among those sued were state licensing officers. *Id.* at 45. The Court found that the plaintiffs had standing to sue these officials even without any explicit threat of enforcement and even though the statute provided it was *not* to be enforced by state actors. *Id.* at 46–47.[19] Despite the Act's clear prohibition of state enforcement, eight members of

_____

[19] The statute in pertinent part provided: "*Notwithstanding . . . any other law*, the requirements of this subchapter shall be enforced *exclusively* through . . . private civil actions." Tex. Health & Safety Code Ann. § 171.207(a) (emphasis added). The Act further provided: "No enforcement of this subchapter . . . in response to violations of this subchapter, may be taken or threatened by this state . . . or an executive or administrative officer or employee of this state." *Id.*

the Supreme Court found standing based on regulations imposing merely a general duty on the officials to enforce *other* provisions of the State's health code. *Id.* at 47–48, 47 n.4 (citing Texas Occupational Code § 164.055).

The Supreme Court's *Whole Woman's Health* opinion thus went one step further than the Court's long-running presumption that state officials will enforce state law against those who break them. This presumption mirrors the Court's decades-old practice of finding itself "not troubled by the pre-enforcement nature of" lawsuits unless an enforcing authority "suggest[s] that [a] law will not be enforced" or has given a "reason to assume" that it will not be enforced. *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988). At bottom, *Whole Woman's Health* shows, as the First and Second Circuits have acknowledged, that the Supreme Court's "low" standing threshold for a pre-enforcement constitutional challenge is "quite forgiving," *see Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013); *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14–15 (1st Cir. 1996), whether or not the case involves a First Amendment challenge.

For purposes of Article III standing, *Whole Woman's Health* cannot be distinguished from this case. The general enforcement duty on which the Court relied in *Whole Woman's Health* is no different from the general duty imposed on Chiefs Smith and Anzallo to enforce D.C. law on the Metro in its entirety. *See* Pls.' Mem. in Opp'n to Mot. to Dismiss at 7, ECF No. 46 (explaining Metro police have

no discretion not to enforce D.C. law). And given that *Whole Woman's Health* flatly contradicts the *Navegar* line of cases, this Court must follow the former, and not the latter. *See, e.g.*, *Haynesworth v. Miller*, 820 F.2d 1245, 1260–61 (D.C. Cir. 1987); *see also Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003).[20]

Lest the Court have any residual doubt that the Supreme Court has rendered the *Navegar* line a dead letter, *Susan B. Anthony List v. Driehaus*, decided in 2014, similarly held that "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" 573 U.S. 149, 159 (quoting *Babbitt*, 442 U.S. at 298 (1979)). And in *Federal Election Commission v. Cruz for Senate*, the Court reaffirmed that a break-the-law threshold for standing "finds no support in our standing jurisprudence." 596 U.S. 289, 298 (2022). For all these reasons, the Court can (and should) hold that Supreme Court precedent has abrogated the cases on which the district court relied, reverse its Rule 12(b)(1) dismissal order, and remand with instructions to let this case proceed to the merits.

---

[20] *See also supra* note 15.

## III.    THE COURT SHOULD DISPENSE WITH *NAVEGAR* AND ITS PROGENY VIA AN *IRONS* FOOTNOTE.

Even if, despite the foregoing, the panel still considers itself bound by *Navegar* and *Seegars*, those cases are wrong enough, and have inflicted enough damage, to warrant abandonment via an *Irons* Footnote. *See Irons v. Diamond*, 670 F.2d 265 (D.C. Cir. 1981). As the Court has "long recognized, . . . cases occasionally arise in which action by the court *en banc* may be called for, but the circumstances of the case or the importance of the legal questions presented do not warrant the heavy administrative burdens of full *en banc* hearing." Policy Statement on *En Banc* Endorsement of Panel Decisions at 1 (Jan. 17, 1996) (citing *Irons v. Diamond*, 670 F.2d 265, 267–68, 268 n.11 (D.C. Cir. 1981)).[21] "The kinds of panel decisions the full court has endorsed in the past by means of this substitute for *en banc* hearing . . . include, but are not necessarily limited to":

---

[21] *Available at* https://www.cadc.uscourts.gov/sites/cadc/files/rules-IRONS. PDF

(1) resolving an apparent conflict in the prior decisions of panels of the court;

(2) rejecting a prior statement of law which, although arguably dictum, warrants express rejection to avoid future confusion;

(3) overruling an old or obsolete decision which, although still technically valid as precedent, has plainly been rendered obsolete by subsequent legislation or other developments; and

(4) overruling a more recent precedent which, due to an intervening Supreme Court decision, or the combined weight of authority from other circuits, a panel is convinced is clearly an incorrect statement of current law.

*Id.*[22] Of these four prongs, the last counsels most strongly for dispensing with *Navegar* and its progeny. As noted above, *Navegar* and *Seegars* can be squared neither with intervening Supreme Court caselaw nor with any preceding Supreme Court caselaw. As recounted below, this Court's law of the Circuit contrasts with *every* other circuit to take up this issue. And indeed, no fewer than four of this Court's jurists (including the current Chief Justice of the Supreme Court *and* the

---

[22] *See also In re Sealed Case No. 97-3112*, 181 F.3d 128, 145–46 nn.1–4 (D.C. Cir. 1999) (Henderson, J., concurring) (citing *United States v. Brawner*, 32 F.3d 602, 603 (D.C. Cir. 1994); *U.S. Dep't of Navy v. Federal Labor Relations Auth.*, 952 F.2d 1434, 1439 (D.C. Cir. 1992); *Harbor Ins. Co. v. Schnabel Found. Co.*, 946 F.2d 930, 936 (D.C. Cir. 1991); *United States v. Marble*, 940 F.2d 1543, 1547 (D.C. Cir. 1991); *Chemical Waste Mgmt., Inc. v. EPA*, 873 F.2d 1477, 1482 (D.C. Cir. 1989); *Melcher v. Federal Open Mkt. Comm.*, 836 F.2d 561, 563–64 (D.C. Cir. 1987); *Center for Sci. in Pub. Interest v. Regan*, 802 F.2d 518, 524 (D.C. Cir. 1986); *Lorion v. U.S. Nuclear Regulatory Comm'n*, 712 F.2d 1472, 1479 (D.C. Cir. 1983); *Londrigan v. FBI*, 722 F.2d 840, 844–45 (D.C. Cir. 1983); *Irons*, 670 F.2d at 268 n.11).

author of *Seegars*) have either voted or advocated for excising this aberration from the law of this Circuit. The time to do so is now.

**A.** **No other circuit in the Country restricts pre-enforcement challenges like this one.**

Simply put, no other circuit requires a person bringing a non-First Amendment pre-enforcement challenge to be singled out or personally threatened for purposes of Article III standing. And to be certain, almost every circuit has considered the question.[23] So too, have a host of district courts from around the Nation.[24] Recounting the reasoning from a few of these opinions helps underscore

---

[23] *See, e.g.*, *Bach v. Pataki*, 408 F.3d 75 (2d Cir. 2005); *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015); *Antonyuk v. Chiumento*, 89 F.4th 271, 333–37 (2d Cir. 2023), *vacated on other grounds sub. nom. Antonyuk v. James*, 144 S. Ct. 2709 (2024); *Mobil Oil Corp. v. Attorney Gen. of Va.*, 940 F.2d 73, 75 (4th Cir. 1991); *Peoples Rights Org., Inc. v. Columbus*, 152 F.3d 522 (6th Cir. 1998); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953 (9th Cir. 2014); *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013); *Hejira Corp. v. MacFarlane*, 660 F.2d 1356 (10th Cir. 1981); *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898 (10th Cir. 2012); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012).

[24] *See, e.g.*, *Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368, 373 n.4 (D.R.I. 2022), *aff'd* 95 F.4th 38 (1st Cir. 2024), *pet. cert. pending* Case No. 24-131 (Aug. 2, 2024); *Teter v. Lopez*, Case No. 20-15948, slip op. at 8-9 (9th Cir. 2023), *vacated en banc as moot* (Jan. 22, 2025); *Nastri v. Dykes*, Case No. 23-1023, slip op. at 4–8 (2d. Cir. Mar. 29, 2024) (summary order); *Kipke v. Moore*, 695 F. Supp. 3d 638, 657–58 (D. Md. 2023) (granting preliminary injunction in part), *summ. j. granted* Case No. 1:23-cv-01295 (Aug. 2, 2024); *Schoenthal v. Raoul*, Case No. 22-cv-50326, slip op. at 8–9 (N.D. Ill. Aug. 30, 2024), *appeal pend.* Case No. 24-2643 (7th Cir. Sept. 20, 2024); *Rocky Mountain Gun Owners v. Polis*, 685 F. Supp. 3d 1033, 1047 n.9 (D. Colo. 2023).

the degree to which *Navegar* and *Seegars* are out of step with the rest of the federal-court system.

    **1. The Second Circuit.** In the Second Circuit's *Bach v. Pataki* decision, the court examined whether a plaintiff who had not bothered applying for a handgun license had standing to challenge New York's ban on license issuance to non-residents. 289 F. Supp. 2d 217 (N.D.N.Y. 2003), *aff'd,* 408 F.3d 75 (2d Cir. 2005). The court held that because the plaintiff wanted to receive a license but was statutorily foreclosed getting one, he had standing to challenge the ban. 289 F. Supp. 2d at 223. Whether he was warned by the State Police that, if found in New York with his handgun he would be subject to prosecution, 408 F.3d at 77, did not figure into the standing analysis at either the district court or at the Second Circuit. *See id.* at 82–83; 289 F. Supp. 2d at 223, .

    In a case challenging a firearms ban similar to the one at issue in *Seegars* and *Parker*, the court in *New York State Rifle & Pistol Association v. Cuomo* found standing because the plaintiffs "testif[ied] that they own rifles, pistols, and large-capacity magazines," and that "but for the Act, they would acquire weapons and ammunition-feeding devices that the Act renders illegal." 990 F. Supp. 2d 349, 358 (W.D.N.Y. 2013), *aff'd in part and rev'd in part,* 804 F.3d 242 (2d Cir. 2015). For that reason alone, the district court concluded that they "face a credible threat of prosecution and should not be required to await and undergo a criminal prosecution

as the sole means of seeking relief." *Id.* at 358–59 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010)). The Second Circuit on appeal saw no need even to address the plaintiffs' standing. *See generally* 804 F.3d 242.

Finally, in a sensitive-places challenge indistinguishable from that brought by Plaintiffs here, the Second Circuit, in *Antonyuk*, found standing because the plaintiff, who wished to carry his firearm in a gun-free zoo, averred that he and his wife had visited the zoo once or twice every fall, expressed that they planned to do so again, and surmised that they would do so at least once within the next ninety days. *Antonyuk v. Chiumento*, 89 F.4th 271, 352–53 (2023). The Second Circuit found that the plaintiff's "averments [were] in line with the kinds of allegations that the Supreme Court has found sufficient to support pre-enforcement standing." *Id.* at 353 (proceeding to discuss *Babbitt*, 442 U.S. 289, *Holder*, 561 U.S. 1, and *Steffel*, 415 U.S. 452).

At bottom, the court found that the plaintiff's "averments, while short of pleading the time and date of his intended visit to the zoo, [were] more specific than the allegations found sufficient in *Babbitt*, *Holder*, and *Steffel*," which, according to the Second Circuit, meant that he had pleaded adequately, for Article III purposes, his "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute." *Id.* at 352–53. And in no uncertain terms, the Second Circuit emphasized that "the bar for stating a credible threat of enforcement

is 'low' and 'quite forgiving.'" *Id.* at 353 (citing *Hedges v. Obama*, 724 F.3d 170, 197 (2d. Cir. 2013)). In other words, the Second Circuit adheres to the principle that "[i]t is not necessary that a plaintiff be specifically threatened with prosecution" to show that she has Article III standing. *Id.*

2. **The Fourth Circuit.** Similarly, the Fourth Circuit, in a non-First Amendment case, rejected the argument that a plaintiff need be specifically singled out for enforcement before he has Article III standing to bring a pre-enforcement challenge. In *Mobil Oil Corp. v. Attorney General of Virginia*, the Fourth Circuit reversed the district court's Rule 12(b)(1) dismissal, noting, first, that "[t]he gravamen of the district court's opinion and the Attorney General's argument is that unless Mobil can show that the Attorney General will enforce the statute, there is no dispute with the Attorney General." 940 F.2d 73, 76–77. But because "[t]he Attorney General ha[d] not . . . disclaimed any intention of exercising her enforcement authority," *id.* at 76, the court found that the plaintiff was laboring under a credible threat of enforcement. For that reason, the Fourth Circuit saw "no reason to assume that the Virginia legislature enacted this statute without intending it to be enforced," and because "Mobil has certainly alleged 'an actual and well-founded fear' that the law will be enforced, and has in fact 'self-censored' itself by complying with the statute, incurring harm all the while," it had standing to bring its challenge. *Id.*

**3. The Sixth Circuit.** *Peoples Rights Organization, Inc. v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998), is also no different from this case, a fact observed by the Court in *Seegars*. *See* 396 F.3d at 1255. In *Peoples Rights Organization*, the court found standing where the plaintiffs faced the same Catch-22 that Plaintiffs face here: "They can either possess their firearms in Columbus and risk prosecution under the City's law, or, alternatively, they can store their weapons outside the City, depriving themselves of the use and possession of the weapons." 152 F.3d at 529. "In the district court, the City argued that this matter was not justiciable, because Plaintiffs did not allege that they ha[d] been charged with a criminal violation of the ordinance, nor had [the organization] made any claim that it was being prosecuted in some manner." *Id.* at 529. The Sixth Circuit, however, held that the City's argument was "contrary to well-settled law and utterly inconsistent with the policies underlying the Declaratory Judgment Act." *Id*.

**4. The Seventh Circuit.** Continuing the pattern, the Seventh Circuit, in *Ezell v. City of Chicago*, addressed "a pre-enforcement challenge to . . . the City's ban on firing ranges." 651 F.3d 684, 695 (7th Cir. 2011). In response to an Article III standing challenge, the Seventh Circuit first noted that "[i]t is well-established that 'pre-enforcement challenges . . . are within Article III,'" *id.* (quoting *Brandt v. Village of Winnetka, III*, 612 F.3d 647, 649 (7th Cir. 2010)), which meant that the "plaintiffs need not violate the Ordinance and risk prosecution in order to challenge

it," *id.* (citing *Goldhamer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010) ("A person need not risk arrest before bringing a pre-enforcement challenge.")). According to the Seventh Circuit, the very "existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper, because a probability of future injury counts as 'injury' for the purpose of standing." *Id.* at 695–96 (citing *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010)).

**5. The Ninth Circuit.** In *Jackson v. City & County of San Francisco*, 746 F.3d 953 (9th 2014), the Ninth Circuit addressed a Second Amendment challenge to a trigger-lock requirement. In that case, the court found that the plaintiffs had standing because "[t]he individual plaintiffs are handgun owners and citizens of San Francisco 'who presently intend to keep their handguns within the home in a manner ready for immediate use to protect themselves and their families.'" *Id.* at 958. The Ninth Circuit required nothing more before allowing the case to proceed to the merits. In so doing, the court followed earlier precedent making plain that the Ninth Circuit has "never held that a specific threat is necessary to demonstrate standing." *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 n.5 (9th Cir. 2013).

**6. The Tenth Circuit.** In a case with parallels to *Navegar*, the Tenth Circuit addressed whether the phrase "drug paraphernalia" in a criminal statute was constitutionally vague. *Hejira Corp. v. MacFarlane*, 660 F.2d 1356 (10th Cir. 1981). In response to an argument that the plaintiffs ("drug paraphernalia" sellers and

advertisers) lacked standing to challenge the law, the Tenth Circuit "agree[d] . . . with the finding of the district court that the federal court ha[d] jurisdiction over this case." *Id.* at 1358. Even though "[n]o criminal prosecution . . . ha[d] commenced as a result of the enforcement of the Act," the court reasoned that the "record clearly show[ed] that plaintiffs face real and genuine threats of prosecution under the Act so as to show the existence of an Article III case or controversy." *Id.* at 1360 (citing *Steffel*, 415 U.S. 452).

Thirty years later, the Tenth Circuit doubled down on its reasoning in *Hejira Corp.* In *Consumer Data Industry Association v. King*, the court addressed a trade association's pre-enforcement challenge to a state law making it easier for identity-theft victims to expunge negative information from their credit reports. 678 F.3d 898 (10th Cir. 2012). Although the trade association "had not yet been injured when it filed suit," the court reasoned that "the existence of a statute implies the threat of its enforcement, and the association was entitled to bring a pre-enforcement challenge based on the probability of future injury." *Id.* at 902 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983); *Abbott Labs. v. Gardner*, 387 U.S. 136 at 153–54 (1967)).

**7. The Eleventh Circuit.** Finally, the Eleventh Circuit's opinion in *GeorgiaCarry.Org, Inc. v. Georgia*, addressed facts indistinguishable from those here. 687 F.3d 1244 (11th Cir. 2012). In that case, the court found standing because

an "'injury' in th[e] pre-enforcement context is the well-founded fear that comes with the risk of subjecting oneself to prosecution for engaging in allegedly protected activity." *Id.* at 1252 (citing *Babbitt*, 442 U.S. at 298–99). Previously, the court had "held that a risk of prosecution is sufficient if the plaintiff alleges . . . that a credible threat of prosecution exists." *Id*. (citing *Jacobs v. The Florida Bar*, 50 F.3d 901, 904 (11th Cir. 1995)). And to carry this burden, "a plaintiff must show that there is 'a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement.'" *Id.* (quoting *Am. Civil Liberties Union v. The Florida Bar*, 999 F.2d 1486, 1492 (11th Cir. 1993) (internal citation omitted)). So long as "the plaintiff is seriously interested in disobeying, and the defendant seriously inten[ds] on enforcing the challenged measure," standing exists. *Id.* (quoting *International Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809, 818 (5th Cir. 1979)).

Applying this test, the Eleventh Circuit reasoned that "[a]lthough the Amended Complaint is lacking in many respects, we believe that [p]laintiffs have alleged a credible threat of prosecution under the Carry Law sufficient to establish standing to bring a facial challenge." *Id*. It did so because "[t]hey are license holders who regularly attend services at a place of worship," and, "[m]oreover, they 'would like to carry a handgun in such place of worship for the protection of [their] family and [themselves], but [they are] in fear of arrest and prosecution." *Id.* For that reason, it "seem[ed] clear" to the Eleventh Circuit that the plaintiffs were "seriously

interested in engaging in conduct that is arguably prohibited by the Carry Law and that could give rise to prosecution by state authorities." *Id*. And because "[n]othing in the defendants' answers suggests that the Carry Law will not be vigorously enforced," the court could not "say that there exists only a 'speculative risk' of prosecution; rather, [p]laintiffs appear to be subject to a legitimate threat that they will be prosecuted for activity that, they believe, is constitutionally protected." *Id.*

\*       \*       \*

The consensus is unmistakable. In every other jurisdiction, Plaintiffs would need to show neither a direct threat of arrest nor a special-enforcement priority to bring their Second Amendment challenge. Instead, every other jurisdiction has found sufficient a well-pleaded "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute." *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt*, 442 U.S. at 298). This Circuit's *Navegar* line, as interpreted by the district court, thus differs from the decisions of its sister circuits, as well as those of the Supreme Court, and it works to the profound detriment of law-abiding citizens who wish to see their fundamental rights vindicated by the federal judiciary. The district court's Rule 12(b)(6) dismissal should thus be reversed and this case remanded with instructions to proceed to the merits.

**B.** **Judges of this Circuit have maintained that *Navegar* and *Seegars* should be corrected by the en banc Court.**

None of the problems with *Navegar* or *Seegars* has flown under this Court's radar. In *Seegars* itself, the Court could not "help noting that" *Navegar* remained "in sharp tension with standard rules governing pre[-]enforcement challenges to agency regulations" and with the Circuit's "cases upholding pre[-]enforcement review of First Amendment challenges to criminal statutes." 396 F.3d at 1253, 1254. After the panel issued *Seegars*, Judge Sentelle, Judge Randolph, and then-Judge John Roberts voted to rehear it en banc, with Judge Williams—the author of *Seegars*—issuing a statement urging the Court to do the same. *See Seegars v. Gonzales*, 413 F.3d at 1 (Williams, J., statement regarding en banc denial).

Judge Williams, who authored *Seegars*, wrote in his separate statement that "[a]s a panel we were constrained by recent circuit authority, [*Navegar*], even though, as my opinion for the court made clear, it appeared to be in conflict with an earlier Supreme Court decision, [*Babbitt*]." *Id.* at 2 (internal citations omitted). The choice imposed on the plaintiffs in *Seegars*, according to Judge Williams, remained "between facing criminal prosecution and foregoing security measures they believe necessary and lawful." *Id.* at 3. In conclusion, Judge Williams correctly surmised: "I do not think our law of standing requires that citizens who want to obey the law, but also to follow their judgment as to self-preservation, be told that they cannot get a reading on the validity of the law except by . . . engaging in forbidden behavior." *Id.*

Since then, Judge Brown joined the chorus, noting that the *Navegar* line denies District of Columbia plaintiffs federal court "access they would have under applicable Supreme Court precedent." *Ord*, 587 F.3d at 1146 (Brown, J., dissenting in part). She also proclaimed that "[i]t is long past time to recognize *Navegar*'s flaws and articulate a pre[-]enforcement standing doctrine consistent with decades of Supreme Court precedent." *Id.* at 1153. And she concluded by "borrow[ing] a trope from Theodore Roosevelt: 'Nine-tenths of wisdom consists in being wise in time,'" and then "urg[ing] the court to rehear this appeal en banc and overrule *Navegar*." *Id.*

**C.    *Navegar* and *Seegars* have interfered with the ability of this Court to enforce the Constitution's guarantees, creating a slew of perverse incentives along the way.**

The *Navegar* line of cases is not only wrong but profoundly dangerous. This is true for several reasons.

First, it incites lawless behavior. This is because "[t]he plaintiff's own action (or inaction) in failing to violate the law *eliminates the imminent threat of prosecution*." *MedImmune, Inc.*, 549 U.S. at 128–29 (emphasis added). Even though laws are supposed to have a normative effect (having more law-abiding citizens in society is self-evidently superior to having fewer), those who believe that their fundamental rights have been hindered (and who would like the chance to persuade

a federal court of the same) are forced to break the law to vindicate those rights.[25] Creating this perverse incentive cannot be what the Court had in mind when it decided *Navegar* and *Seegars*.

The facts here neatly illustrate that point. Plaintiffs fear for their safety while riding the Metro. They also respect the District's laws enough to avoid carrying their concealed firearms while riding. Their opportunity to assert their rights should not be less than a person willing to transgress the District's laws, but that is precisely what *Navegar* and *Seegars* seem to demand. Indeed, *Navegar* and *Seegars* prompted comments from the district court like: "And my guess is—and I'm not saying you should do it, but my guess is that if you left the courthouse today and went down to Judiciary Square and got on the train with a concealed weapon, that no one would have any idea you did it." J.A. 133.

Second (and more perniciously), *Navegar* and *Seegars* let the District enact constitutionally suspect laws and then insulate them from meaningful federal-court review. If the District passes a law that chills constitutionally protected activity, but the number of prosecutions under that law doesn't hit some as-yet-undefined (and plainly arbitrarily) level, the law never gets challenged, even where (as here)

_____

[25] For example, multiple individuals have expressed to counsel their willingness to violate D.C. Code § 7-2509.07(a)(6) to have standing under the *Navegar* line of cases to contest the Metro Carry Ban. Counsel has declined to accept those offers.

Plaintiffs would engage in the constitutionally protected activity but for the law's chilling effect. This Circuit's precedent in essence grants the District carte blanche to (1) pass any unconstitutional law other than one violating the First Amendment, (2) use the threat of the law to chill the protected activity, (3) not prosecute, mainly because the protected activity has been sufficiently chilled, and then (4) move to dismiss any attempt to adjudicate the law's constitutionality in federal court. The incentive exceeds perversity, especially when this doctrine is wielded by a government that insists on enacting statutes that violate the Second Amendment.[26]

Third, this errant jurisprudence stymies the Court's ability to speak on pressing civil rights questions of the day. So long as *Navegar* and *Seegars* exist, this Court's voice will remain far more muted than it should. The Circuit's sole position among its sisters, and the Supreme Court's clarification of pre-enforcement standing since *Navegar*, strongly point toward a conclusion that *Navegar*'s rational should be scrapped. This Court should recognize this, vacate the dismissal of Plaintiffs' First Amended Complaint, and remand this case for consideration of the merits.

---

[26] *See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570 (2008) (striking as unconstitutional D.C.'s ban on operable handguns in the home); *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) (striking as unconstitutional D.C.'s "may issue" concealed-carry licensing regime); *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014) (striking as unconstitutional D.C.'s de facto ban on carrying handguns outside the home).

*     *     *

The Court's *Irons* Footnote procedure provides a clean way to right the wrong inflicted by the Circuit's errant pre-enforcement standing precedent. *Navegar* was wrong when it was decided, *Seegars* was wrong to expand *Navegar*, and the district court was wrong to rely on both cases when it dismissed Plaintiffs' Second Amendment challenge to the District's Metro Carry Ban. The Court need not perpetuate those errors, and Plaintiffs respectfully request that the Court use this opportunity to harmonize its pre-enforcement standing jurisprudence with that of the Supreme Court, as well as that of its sister circuits.

## CONCLUSION

To be certain, the danger made manifest by the district court's ruling is not limited to Second Amendment litigation. Due Process and Equal Protection challenges are affected.[27] So, too, are Commerce Clause and Supremacy Clause challenges.[28] Indeed, unless the Court dispenses with both *Navegar* and *Seegars*, it would be hard pressed to allow cases like *Doe v. Bolton* to move forward, since, in that case, none of the doctors challenging a criminal abortion statute had "been prosecuted, or threatened with prosecution, for violation" of the law. *See* 410 U.S.

---

[27] *Contra High Ol' Times v. Busbee*, 673 F.2d 1225, 1227 (11th Cir. 1982) (analyzing pre-enforcement challenge to state statute for violating Due Process, Equal Protection, the Commerce Clause, and the Supremacy Clause).

[28] *Contra id.*

179, 188 (1973). There, "[t]he statute's mere existence constituted 'a sufficiently direct threat of personal detriment.'" *Ord*, 587 F.3d at 1148 (Brown, J., dissenting in part) (quoting *Doe*, 410 U.S. at 188). Here, however, the courthouse doors remain bolted shut.

The time for clarifying this exceptionally important question is now. So long as this Court's crabbed pre-enforcement-challenge rule persists, litigants will rightly choose not to subject themselves to a possible criminal record. That means, however, that federal-court review of potentially unconstitutional criminal laws will consistently skirt the crucible of constitutional examination. That, in turn, virtually guarantees that law-respecting citizens (like Plaintiffs here) will labor under regulations that violate fundamental rights protected by the supreme law of the land unless they are ready to "bet the farm" on their freedom and their continued right to bear arms.[29] *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010).[30]

---

[29] A conviction for violating Section 7-2509.07(a)(6) has serious collateral consequences. Although the provision is a misdemeanor, it is a weapons offense as defined by D.C. law. *See* D.C. Code § 7-2501.01(18). Conviction of a weapons offense renders a person barred for life from registering a firearm in the District, thus effecting a forfeiture of Second Amendment rights. *See id.* § 7-2502.03(a)(2).

[30] "We normally do not require plaintiffs to 'bet the farm . . . by taking the violative action' before 'testing the validity of the law.'" *MedImmune, Inc.*, 549 U.S. 118, 129 (2007); *see also Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1251, 1278 (D.C. Cir. 2018).

For all these reasons, the Court should reverse the district court's Rule 12(b)(1) dismissal and remand with instructions that this case must proceed to the merits.

February 7, 2025

Respectfully submitted,

*/s/ George L. Lyon, Jr.*
George L. Lyon, Jr.
BERGSTROM ATTORNEYS
1929 Biltmore Street, NW
Washington, DC 20009
(202) 669-0442 (phone)
(202) 483-92667 (facsimile)
*gll@bergstromattorneys.com*

*/s/ Edward M. Wenger*
Edward M. Wenger
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N Street NW, Suite 643A
Washington, DC 20037
(202) 737-8808 (phone)
(540) 341-8809 (facsimile)
*emwenger@holtzmanvogel.com*

Caleb Acker
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Highway
(540) 341-8808 (phone)
(540) 341-8809 (facsimile)
*cacker@ holtzmanvogel.com*

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume and word-count limits of Federal Rule of Appellate Procedure 27(d) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 11,385 words.

2.     This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Edward M. Wenger*
EDWARD M. WENGER

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 7th day of February, 2025, a true copy of the Initial Brief of Appellants was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send by email a notice of docketing activity to the registered Attorney Filer on the attached electronic service list.

*/s/ Edward M. Wenger*
EDWARD M. WENGER

# STATUTORY ADDENDUM

§ 7–2501.01. Definitions.

As used in this unit the term:

[Non relevant definitions omitted]

**(18)** "Weapons offense" means any violation in any jurisdiction of any law which involves the sale, purchase, transfer in any manner, receipt, acquisition, possession, having under control, use, repair, manufacture, carrying, or transportation of any firearm, ammunition, or destructive device.

§ 7–2502.03. Qualifications for registration; information required for registration.

**(a)** No registration certificate shall be issued to any person (and in the case of a person between the ages of 18 and 21, to the person and the person's signatory parent or guardian) or organization unless the Chief determines that such person (or the president or chief executive in the case of an organization):

**(1)** Is 21 years of age or older; provided, that the Chief may issue to an applicant between the ages of 18 and 21 years old, and who is otherwise qualified, a registration certificate if the application is accompanied by a notarized statement of the applicant's parent or guardian:

**(A)** That the applicant has the permission of the applicant's parent or guardian to own and use the firearm to be registered; and

**(B)** The parent or guardian assumes civil liability for all damages resulting from the actions of such applicant in the use of the firearm to be registered; provided further, that such registration certificate shall expire on such person's 21st birthday;

**(2)** Has not been convicted of a weapons offense (but not an infraction or misdemeanor violation under § 7-2502.08, § 7-2507.02, § 7-2507.06, or § 7-2508.07) or a felony in this or any other jurisdiction (including a crime punishable by imprisonment for a term exceeding one year);

[Rest of statute omitted]

§ 7–2509.07. Prohibitions on carrying licensed pistols.

**(a)** No person holding a license shall carry a pistol in the following locations or under the following circumstances:

**(1)** A building or office occupied by the District of Columbia, its agencies, or instrumentalities;

**(2)** The building and grounds, including any adjacent parking lot, of an childcare facility, preschool, public or private elementary or secondary school; or a public or private college or university;

**(3)** A hospital, or an office where medical or mental health services are the primary services provided;

**(4)** A penal institution, secure juvenile residential facility, or halfway house;

**(5)** A polling place while voting is occurring;

**(6)** A public transportation vehicle, including the Metrorail transit system and its stations;

**(7)** Any premises, or portion thereof, where alcohol is served, or sold and consumed on the premises, pursuant to a license issued under Title 25; provided, that this prohibition shall not apply to premises operating under a temporary license issued pursuant to § 25-115, a C/R, D/R, C/H, D/H or caterer license issued pursuant to § 25-113, or premises with small-sample tasting permits issued pursuant to § 25-118, unless otherwise prohibited pursuant to subsection (b)(3) of this section;

**(8)** A stadium or arena;

**(9)** A gathering or special event open to the public; provided, that no licensee shall be criminally prosecuted unless:

**I.** **(A)** The organizer or the District has provided notice prohibiting the carrying of pistols in advance of the gathering or special event and by posted signage at the gathering or special event; or

**II.** **(B)** The licensee has been ordered by a law enforcement officer to leave the area of the gathering or special event and the licensee has not complied with the order;

**(10)** The public memorials on the National Mall and along the Tidal Basin, and any area where firearms are prohibited under federal law or by a federal agency or entity, including U.S. Capitol buildings and grounds;

**(11)** The White House Complex and its grounds up to and including to the curb of the adjacent sidewalks touching the roadways of the area bounded by Constitution Avenue, N.W., 15th Street, N.W., H Street, N.W., and 17th Street, N.W.;

**(12)** The U.S. Naval Observatory and its fence line, including the area from the perimeter of its fence up to and including to the curb of the adjacent sidewalks touching the roadway of Observatory Circle, from Calvert Street, N.W., to Massachusetts Avenue, N.W., and around Observatory Circle to the far corner of Observatory Lane;

**(13)(A)** When a dignitary or high-ranking official of the United States or a state, local, or foreign government is moving under the protection of the MPD, the U.S. Secret Service, the U.S. Capitol Police, or other law enforcement agency assisting or working in concert with MPD, within an area designated by the Chief, the Chief of the U.S. Secret Service, or the Chief of the U.S. Capitol Police, or a designee of any of the foregoing, that does not include any point at a distance greater than 1,000 feet from the moving dignitary or high-ranking official; provided, that no licensee shall be criminally prosecuted unless:

**(i)** The law enforcement agency provides notice of the designated area by the presence of signs, law enforcement vehicles or officers acting as a perimeter, or other means to make the designated area of protection obvious;

**(ii)** The District or federal government has provided notice prohibiting the carrying of pistols along a designated route or in a designated area in advance of the event, if possible, and by posted signage along a route or in a designated area; or

**(iii)** The licensee has been ordered by a law enforcement officer to leave the designated area and the licensee has not complied with the order.

**III.** **(B)** For the purposes of this paragraph, the term "moving" shall include any planned or unplanned stops, including temporary stops, in locations open to the public.

**(14)** When demonstration in a public place is occurring, within an area designated by the Chief or his or her designee, or other law enforcement agency, that does not include any point at a distance greater than 1,000 feet from the demonstration; provided, that no licensee shall be criminally prosecuted unless:

**IV.**    **(A)** The law enforcement agency provides notice of the designated area by the presence of signs, law enforcement vehicles or officers acting as a perimeter, or other means to make the designated area of the demonstration obvious;

**V.**    **(B)** The District or federal government has provided notice prohibiting the carrying of pistols along or within a demonstration route or designated area in advance of the event, if possible, and by posted signage along a demonstration route or designated area; or

**VI.**    **(C)** The licensee has been ordered by a law enforcement officer to leave the designated area and the licensee has not complied with the order; or

**(15)** Any prohibited location or circumstance that the Chief determines by rule; provided, that for spontaneous circumstances, no criminal penalty shall apply unless the licensee has notice of the prohibition and has failed to comply.

**(b)** Except to the extent of any inconsistency with 18 U.S.C. §§ 926B and 926C, the carrying of a concealed pistol:

**(1)** On private residential property shall be presumed to be prohibited unless otherwise authorized by the property owner or person in control of the premises and communicated personally to the licensee in advance of entry onto the residential property;

**(2)** In a church, synagogue, mosque, or other place where people regularly assemble for religious worship shall be presumed to be prohibited unless the property is posted with conspicuous signage allowing the carrying of a concealed pistol, or the owner or authorized agent communicates allowance personally to the licensee in advance of entry onto the property; provided, that such places may not authorize the carrying of a concealed pistol where services are conducted in locations listed in subsection (a) of this section; and

**(3)** On private property that is not a residence shall be presumed to be permitted unless the property is posted with conspicuous signage prohibiting the carrying of a concealed pistol, or the owner or authorized agent communicates such prohibition personally to the licensee.

[Rest of statute omitted]