ORAL ARGUMENT NOT YET SCHEDULED

No. 24-7127

# In the United States Court of Appeals for the District of Columbia Circuit

GREGORY T. ANGELO, TYLER YZAGUIRRE,
ROBERT M. MILLER, & CAMERON M. ERICKSON

*Plaintiffs-Appellants*,

v.

DISTRICT OF COLUMBIA; PAMELA A. SMITH, WASHINGTON
METROPOLITAN POLICE DEPARTMENT CHIEF; BRIAN L.
SCHWALB, DISTRICT OF COLUMBIA ATTORNEY GENERAL; &
MICHAEL ANZALLO, WASHINGTON METROPOLITAN TRANSIT
AUTHORITY POLICE DEPARTMENT CHIEF,

*Defendants-Appellees*,

## REPLY BRIEF OF APPELLANTS

On Appeal from the United States District Court
for the District of Columbia (No. 1:22-cv-01878-RDM)

George L. Lyon, Jr.
BERGSTROM ATTORNEYS
1929 Biltmore
Street, NW
Washington, DC 20009
*gll@*
*bergstromattorneys.com*
(202) 669-0442 (phone)
(202) 483-9267 (fax)

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................... ii

INTRODUCTION &  SUMMARY OF THE ARGUMENT ...................................1

ARGUMENT ...................................................................................2

    I.    *NAVEGAR* AND ITS PROGENY ARE NOT A BAR TO PLAINTIFFS' STANDING.2

    II.    TO THE EXTENT *NAVEGAR* AND ITS PROGENY ARE APPLICABLE, THEY ARE NO LONGER GOOD LAW........................................................12

    III.    DEFENDANTS HAVE NOT REFUTED OUR SHOWING THAT THE *NAVEGAR* LINE IS INCONSISTENT WITH THE OTHER FEDERAL CIRCUITS. ................21

CONCLUSION ...............................................................................25

CERTIFICATE OF COMPLIANCE .....................................................27

CERTIFICATE OF SERVICE............................................................28

i

# TABLE OF AUTHORITIES

## Cases

*American Library Ass'n v. Barr*,
  956 F.2d 1178 (D.C. Cir. 1992) ..........................................................4, 5

*\*Antonyuk v. Chiumento*,
  89 F.4th 271 (2d Cir. 2023) ...................................................................24

*Attias v. Carefirst, Inc.*,
  865 F.3d 620 (D.C. Cir. 2017) .................................................7, 14, 15

*\*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ........................................................................12, 14

*Bender v. Williamsport Area Sch. Dist.*,
  475 U.S. 534 (1986) ................................................................................23

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973) ........................................................................20, 21

*City Council of Los Angeles v. Taxpayers for Vincent v. Taxpayers*,
  466 U.S. 89 (1984) ..........................................................................20, 21

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .........................................................................7, 13

*Ctr. for Individual Freedom v. Carmouche*,
  449 F.3d 655 (5th Cir. 2006) ...............................................................20

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) .........................................................................2, 22

*\*Doe v. Bolton*,
  410 U.S. 179 (1973) ........................................................................12, 21

*Epperson v. Ark.*,
  393 U.S. 97 (1968) ..................................................................................12

*\*GeorgiaCarry.Org, Inc v. Georgia*,
  687 F.3d 1244 (11th Cir. 2012) ...........................................................24

*Hemp Indus. Ass'n v. DEA*,
  36 F.4th 278 (D.C. Cir. 2022) .................................................................4

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ....................................................................................14

*In re Idaho Conservation Leagues*,
   811 F.3d 502 (D.C. Cir. 2016) ...............................................................15

*Irons v. Diamond*,
   670 F.2d 265 (D.C. Cir. 1981) ...............................................................25

*\*Jackson v. City & Cnty. of San Francisco*,
   746 F.3d 953 (9th Cir. 2014) ...........................................................23, 24

*Laird v. Tatum*,
   408 U.S. 1 (1972) .....................................................................................6

*Lion Manufacturing v. Kennedy*,
   330 F.2d 833 (D.C. Cir. 1964) ...........................................................3, 4

*Matthew A. Goldstein PLLC v. U.S. Dep't of State*,
   851 F.3d 1 (D.C. Cir. 2017) .....................................................................5

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ...............................................................................13

*N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen*,
   597 U.S. 1 (2022) .....................................................................................1

*Nat'l Ass'n of Broadcasters v. FCC*,
   789 F.3d 165 (D.C. Cir. 2015) ...............................................................15

*Nat'l Student Association v. Hershey*,
   412 F.2d 1103 (D.C. Cir. 1969) ..........................................................3, 7

*Nat'l Press Photographers Ass'n v. McCraw*,
   90 F.4th 770 (5th Cir. 2024) ..................................................................20

*Nat'l Shooting Sports Found. v. Att'y Gen. of NJ.*,
   80 F.4th 215 (3d Cir. 2023) ..............................................................21, 22

*National Conference of Catholic Bishops v. Smith*,
   653 F.2d 535 (D.C. Cir. 1981) .............................................................5, 6

*\*Navegar, Inc. v. United States*,
   103 F.3d 994 (D.C. Cir. 1997) .............................................................2, 9

*Nguyen v. Bonta*,
   No. 24-2036, slip op. (9th Cir. June 20, 2025) ....................................24

*NRA v. Magaw*,
   132 F.3d 272 (6th Cir. 1997) ...........................................................22, 23

*NYSRPA v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015) ..................................................................23

*NYSRPA v. Cuomo*,
990 F. Supp. 2d 349 (W.D.N.Y. 2013) ................................................................23

*Parker* or *Ord v. District of Columbia*,
587 F.3d 1136 (D.C. Cir. 2009) .........................................................................11

*\*Parker v. District of Columbia*,
478 F.3d 370 (D.C. Cir. 2007) ...................................................................2, 11, 13

*Parker v. District of Columbia*,
Case No. 03-cv-00213EGS (D.D.C.) ...................................................................12

*Peace Ranch, LLC v. Bonta*,
93 F.4th 482, 487 (9th Cir. 2024) .......................................................................22

*Peoples Rights Organization, Inc. v. City of Columbus*,
152 F.3d 522 (6th Cir. 1998) ..............................................................................24

*Saline Parents v. Garland*,
88 F.4th 298, 305 (D.C. Cir. 2023) .....................................................................5, 7

*San Diego Cnty. Gun Rights Comm. v. Reno*,
98 F.3d 1121 (9th Cir. 1996) ..............................................................................22

*\*Seegars v. Gonzales*,
396 F.3d 1248 (D.C. Cir. 2005) .............................................2, 3, 9, 11, 12, 24

*Seegars v. Gonzalez*,
413 F.3d 1 (D.C. Cir. 2005) ................................................................................10

*Sierra Club v. Jewell*,
764 F.3d 1 (D.C. Cir. 2014) ................................................................................15

*\*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ...........................................................................13, 14, 23

*Thomas v. Anchorage Equal Rights Comm'n*,
220 F.3d 1134 (9th Cir. 2000) (en banc) ...........................................................22

*Thornhill v. Alabama*,
310 U.S. 88 (1940) .............................................................................................20

*United Presbyterian Church in the U.S.A. v. Reagan*,
738 F.2d 1375 (D.C. Cir. 1984) .........................................................................6, 7

*Village of Hoffman Estates v. Flipside, Hoffman Estates*,
455 U.S. 489 (1982) .............................................................................................9

*Virginia v. American Booksellers Ass'n*,
484 U.S. 383 (1988) ...............................................................................5, 12, 14

iv

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021) ........................................................15, 16, 17, 18, 19

*Wolford v. Lopez*,
  116 F.4th 959 (9th Cir. 2024) ............................................................24

*Wrenn v. D.C.*,
  864 F.3d 650 (D.C. Cir. 2017) ...............................................................1

*Younger v. Harris*,
  401 U.S. 37 (1971) ...............................................................................22

**Statutes**

D.C. Code § 22-4504 .................................................................................11

D.C. Code § 7-2507.02 ..............................................................................12

D.C. Code § 7-2509.07 ..............................................................1, 5, 7, 12, 18

Tex. Health & Safety Code Ann. § 171.207(a) (emphasis added) ...........17

**Other Authorities**

Calibre Press, *Detecting Armed Individuals* (online course), available at
https://onlinetraining.calibrepress.com/courses/detecting-armed-individuals/....11

Calibre Press, *How to Spot Armed Suspects* (October 21, 2019), available at
https://calibrepress.com/2019/10/how-to-spot-armed-suspects/..........................10

*How To Spot A Concealed Handgun: 10 Signs Someone Is Carrying A Gun,*
Everyday Carry Concealed, available at
https://everydaycarryconcealed.com/how-to-spot-a-concealed-handgun-10-signs-
someone-is-carrying-a-gun/ ..............................................................................10

Kevin Porter United States Secret Service, *Characteristics of the Armed
Individual,* available at https://info.publicintelligence.net/USSS-
ArmedIndividuals.pdf .........................................................................................10

# INTRODUCTION &
# SUMMARY OF THE ARGUMENT

Plaintiffs are four District Pistol Carry Licensees ("CPL"). JA 68, 70, 72, 74. Each regularly uses the Washington Metropolitan Transit Authority ("Metro"). *Id.* Owing to the well-publicized crime problem infesting the Metro, Plaintiffs would carry their licensed handguns on Metro for personal protection in accordance with their Second Amendment right,[1] except that District law makes it a crime to do so. JA 69-72, 75. *See* D.C. Code § 7-2509.07(a)(6). Understanding that the District, through the Metropolitan Police Department ("MPD"), aggressively enforces the city's gun laws, JA 78, and that Metro police officers have no discretion in enforcing District law on Metro, *see* Doc. 42-1 at 7 (Metro police required "to enforce all laws"); JA 77 (zero tolerance), Plaintiffs understandably fear that if they carry on the Metro and have to use their firearms in self-defense or if their firearms are otherwise discovered by officers, they will be arrested for violating § 7-2509.07(a)(6). As a result, Plaintiffs either forgo exercise of their right to carry for self-defense, thereby experiencing an increased risk of being victimized while riding Metro, JA 69, 71, 73, 74, or they use other more expensive or inconvenient modes of transportation that allow them to exercise their constitutional right. JA 69-71, 73-

---

[1] *See N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1 (2022); *Wrenn v. D.C.*, 864 F.3d 650 (D.C. Cir. 2017).

75. The issue presented here is whether this set of facts establishes Plaintiffs' standing to sue for a declaration that the Metro carry ban violates the Second Amendment and an injunction against enforcement of that provision.

Our opening brief maintained that the *Navegar* line of cases[2] on which the district court relied is distinguishable from this case, and if not, that Supreme Court standing decisions since *Navegar* have eviscerated *Navegar*'s rationale, as has the weight of authority from the various other circuits. Accordingly, we ask the Court to recognize that the *Navegar* line does not control this case, to reverse the district court's dismissal of the Amended Complaint, and to remand for a decision on the merits. Defendants disagree on all counts. We show below why Defendants' arguments lack merit.

## ARGUMENT

### I.  *NAVEGAR* AND ITS PROGENY ARE NOT A BAR TO PLAINTIFFS' STANDING.

Our opening brief emphasized that *Navegar*'s holding principally arose from the lack of specificity of the copycat assault-weapons provision at issue there and uncertainty whether the statute, as the government would interpret it, proscribes the conduct the plaintiff in that case intended to pursue. OB at 14-19. Defendants claim

---

[2] *See Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997); *Seegars v. Gonzales*, 396 F.3d 1248 (D.C. Cir. 2005), pet. en banc den., 413 F.3d 1 (D.C. Cir. 2005); *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), aff'd other grounds, *District of Columbia v. Heller*, 554 U.S. 570 (2008).

this point was secondary to the Court's standing holding and that the principal determinant was "the 'generic' weapons-and-accessories laws 'could be enforced against a great number of weapon manufacturers' and thus placed no 'special priority' on the plaintiffs in that case." AB at 21-22. A fair reading of *Navegar* suggests it was the combination of these two factors that convinced the Court the case was not judiciable. *See, e.g.*, *Seegars,* 396 F.3d at 1258 (Sentelle, J., dissenting). There is of course no hard and fast rule that a person lacks standing just because a government action could apply to a number of others, indeed a great number of others. *See, e.g.*, *Nat'l Student Association v. Hershey*, 412 F.2d 1103, 1111 (D.C. Cir. 1969).

Defendants discuss several cases that, in their view, bolster *Navegar*'s holding. AB at 14-15. Review of those cases confirms *our* point. Standing will be denied where it is unclear that a plaintiff's proposed conduct is encompassed within the statute or other government action, or the government otherwise disclaims an intent to enforce against the plaintiff.

Take *Lion Manufacturing v. Kennedy*, 330 F.2d 833 (D.C. Cir. 1964), for example. There, the plaintiffs challenged a statute prohibiting interstate shipment of certain gambling machines. This Court found standing lacking because "it [was] impossible to calculate from the facts before the District Court the degree to which plaintiffs are imperiled by the amended Act." *Id.* at 840. The plaintiffs there did not

3

"describe in detail the nature of the machines" they manufactured, so the Court had no basis to conclude they came within the Act and thus that they suffered injury. *Id.* at 838.

*Hemp Indus. Ass'n v. DEA*, 36 F.4th 278 (D.C. Cir. 2022), is similar. In that case, plaintiffs sought to prevent the DEA from enforcing the Controlled Substances Act against byproducts of a hemp extraction process. *Id.* at 281. The district court dismissed the complaint, and this Court affirmed on the grounds that the plaintiffs were, in fact, attacking a DEA interim rule without following the required statutory process. *Id.* To the extent the plaintiffs there faced a threat of prosecution under the rule, this Court found a lack of substantial risk, stating, "[w]e would be hard-pressed to conclude that an agency rule that allegedly takes no position on the liability or immunity of a desired course of conduct can simultaneously proscribe or deny immunity for that same conduct." *Id.* at 291.

Likewise, in *American Library Ass'n v. Barr*, 956 F.2d 1178 (D.C. Cir. 1992), the plaintiffs challenged provisions for seizure and forfeiture of materials related to child-pornography production. They argued that the statute chilled their First Amendment activities, but this Court found that the "government has not threatened them with enforcement," that it had disclaimed that it would seize expressive materials for evidentiary purposes or seek forfeiture before a conviction, and that plaintiffs' activities, as they "described them, would not bring them within the ambit

of the statutes." *Id.* at 1187, 1198.[3] Additionally, this Court noted that the plaintiffs'
generalized, abstract, and hypothetical allegations suggested a lack of an actual
controversy between the parties. *See id.* at 1187. This Court contrasted *Virginia v.
American Booksellers Ass'n*, 484 U.S. 383 (1988), where the Supreme Court held
that the "plaintiffs had standing because the statute was 'aimed directly' at them—
they would be subject to criminal prosecution for non-compliance." 956 F.2d at 1194
(quoting 484 U.S. at 392-93). Further, this Court explained that the Supreme Court
had said that Virginia had not suggested the "'law will not be enforced,' and the
Court therefore assumed it would be." 956 F.2d at 1194 (quoting 484 U.S. at 393).

D.C. Code § 7-2509.07(a)(6) is likewise directed at CPL holders such as
Plaintiffs, and Defendants have not suggested it will not be enforced. Indeed,
Plaintiffs specifically asked Defendants to disclaim enforcement of the law in light
of its questionable constitutionality, but were met with silence. *See* JA 76-78.[4]

---

[3] *See also Saline Parents v. Garland*, 88 F.4th 298 (D.C. Cir. 2023) (Government
acknowledged "that the professed activities cited by Appellants in their Complaint
fall outside the scope of the Memorandum and are fully protected by the
Constitution" and stated that Appellants are not targets of any purported AG
Policy"). *Accord Matthew A. Goldstein PLLC v. U.S. Dep't of State*, 851 F.3d 1, 5
(D.C. Cir. 2017) (plaintiff's allegations of "'vague and general descriptions of legal
activities that the firm intends to undertake, none of which the State
Department views as' unlawful").

[4] This court noted similar deficiencies in *National Conference of Catholic Bishops
v. Smith*, 653 F.2d 535 (D.C. Cir. 1981), an action involving the Pregnancy
Discrimination Act and implementing regulations. The district court opinion noted
the "government has not initiated and, according to the record before us, does not

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984), involved a challenge to certain aspects of an executive order relating to "foreign intelligence and counterintelligence activities of the Executive Branch." *Id.* at 1377. This Court found that *Laird v. Tatum* 408 U.S. 1 (1972), foreclosed standing based on the "kind of harm alleged, the 'chilling effect'" produced by "fear of being subjected to illegal surveillance and which deters them from conducting constitutionally protected activities":

> There the plaintiffs alleged that a program of intelligence gathering conducted by the Army chilled the exercise of their First Amendment rights of speech and assembly. The Court declined to entertain the suit, holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." 408 U.S. at 13-14, 92 S. Ct. at 2325-2326. The Court distinguished its recognition of "chilling effect" in earlier decisions as follows:

> [I]n each of these cases, the challenged exercise of governmental power was *regulatory, proscriptive, or compulsory in nature,* and the complainant was either *presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging.*

738 F.2d at 1381 (emphases added). "By contrast here, as in *Tatum*, no part of the challenged scheme imposes or even relates to any direct governmental constraint

---

plan to institute any kind of proceedings against the plaintiffs." *Id.* at 541. Moreover, plaintiffs had not "developed a factual record of any kind with respect to their programs" which were described only in general terms. Thus, the court lacked "sufficient facts to analyze how the [act] actually impacts on the plaintiffs although they allege that it does." *Id.*

upon the plaintiffs, and there is no reason why they would be unable to challenge any illegal surveillance of them when (and if) it occurs." 738 F.2d at 1379.[5]

In this case, D.C. Code § 7-2509.07(a)(6) is a direct constraint on Plaintiffs, and there is no question as to the conduct it prohibits, which is the conduct Plaintiffs would undertake if not for the statute. *See Hershey*, 412 F.2d at 137 (plaintiffs "were subject to the direct regulation of draft registration and induction"; their complaint was the "regulation was being administered in such fashion as unduly to impede their exercise of First Amendment rights"); *see also Parents*, 88 F.4th at 304 (government's exercise of power must be regulatory, proscriptive, or compulsory). Thus, contrary to Defendants' suggestion (AB at 15), Plaintiffs' injury claim is not a "subjective chill." There is no doubt the Metro ban applies to Plaintiffs, and their fear of arrest if they violate the law is not imagined or wholly speculative. *Cf. Clapper,* 568 U.S. at 417-18.

---

[5] *See also Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). As this Court explained, the major flaw in plaintiff's argument in that case was that it rested on:

> a highly attenuated chain of possibilities. . . . Several links in this chain would have required the assumption that independent decisionmakers charged with policy discretion . . . and with resolving complex legal and factual questions . . . would exercise their discretion in a specific way. . . . With so many links in the causal chain, the injury the plaintiffs feared was too speculative to qualify as "injury in fact."

*Attias v. Carefirst, Inc.*, 865 F.3d 620, 626 (D.C. Cir. 2017) (citing *Clapper*, 568 U.S. at 410-14).

As shown above, these cases stand for the proposition that standing does not exist where allegations are lacking that the government is targeting a plaintiff's intended conduct either because of the statute's ambiguity or other government action; because a plaintiff fails to allege her proposed conduct is proscribed, or because the government disclaims an intent to enforce the provision against the plaintiff.

In *Navegar*, this Court was unsure how the government intended to enforce the copycat-weapons provision and hence held that the plaintiffs had not shown standing absent a specific threat of enforcement. By contrast, where the statute proscribed specific firearms that only the plaintiffs produced, it was evident that those plaintiffs were targets of the statute, making the threat of enforcement substantial. As the Court explained regarding the copycat provision, the plaintiffs:

> cannot invoke the one factor that we found most significant in our analysis of the other challenges—the statute's own identification of particular products manufactured only by the appellants. In the absence of this factor, the threat of prosecution becomes far less imminent, and these parties' claims to standing concomitantly much weaker . . . . In such circumstances we cannot say that a genuine threat of enforcement has given rise to the requisite "injury in fact" and thus given these parties standing.

> Further, because the general nature of the language in these portions of the Act makes it impossible to foretell precisely how these provisions may be applied, the issues presented in these challenges are less fit for adjudication, suggesting additional concerns as to their ripeness. We can hold a statute to be impermissibly vague on its face only if we conclude that it is capable of no valid application, *see Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495, 102

8

S. Ct. 1186, 1191-92, 71 L. Ed. 2d 362 (1982), and in the absence of an enforcement action either commenced or specifically threatened, we have no actual or imminent concrete application of the statute in which to anchor our inquiry into whether any valid application is possible. For these reasons, we hold that the appellants' challenges to the portions of the Act which describe the outlawed items in general categorical terms are not justiciable at this time.

*Navegar*, 103 F.3d at 1001-02 (D.C. Cir. 1997) (footnote omitted).

Here, Plaintiffs' intended conduct is clear—carrying their licensed handguns on the Metro. The D.C. statute is directed specifically at CPL holders such as Plaintiffs, and the law plainly criminalizes Plaintiffs' intended conduct. Thus, *Navegar*'s discussion—i.e., that a specific threat is needed in the context of determining whether an application of the statute exists as to plaintiffs from which to determine whether the statute is facially invalid for vagueness, *id.* at 1002—is an issue not present here. For these reasons, *Navegar* is distinguishable from this case.

Defendants also dispute that *Seegars* is distinguishable. AB at 22. Defendants acknowledge that the *Seegars* plaintiffs could have obtained standing by submitting registration applications, which MPD would have denied. However, they point out this Court's ruling that one of the *Seegars*' plaintiffs lacked standing to contest the trigger-lock requirement for a registered firearm she possessed. *Id.* (citing *Seegars*, 396 F.3d at 1256). This Court said the "absence" of "an administrative" avenue to challenge the trigger-lock rule could not confer standing because "the imminence of the threatened injury" was still "inadequate." *Id.*

9

*Seegars,* however, is not on point with this case. That situation was much more remote than here. First, as the government pointed out in response to the rehearing petition, the plaintiff's proposed conduct (removing the trigger lock and loading her firearm) was *private*, within her home, with the concomitant likelihood if she broke the law and loaded her firearm the chance law enforcement would discover the violation was remote. *See Seegars v. Gonzalez*, 413 F.3d 1, 6 (D.C. Cir. 2005) (Williams, J., statement on denial of rehearing en banc) (recounting government's argument). Plaintiffs here would carry their licensed pistols on Metro *in public*, where a much greater risk exists that law enforcement would discover their concealed handguns were they to violate the Metro ban. This could happen from inadvertent disclosure; e.g., bending over and exposing a concealed handgun, someone bumping against them, feeling their concealed firearm and alerting officers, or the application of law enforcement techniques specifically designed to reveal whether someone is carrying a firearm.[6] The likelihood of discovery here if Plaintiffs violate the law is thus substantially higher than in *Seegars.*

---

[6] *See, e.g.*, Kevin Porter United States Secret Service, *Characteristics of the Armed Individual,* available at https://info.publicintelligence.net/USSS-ArmedIndividuals.pdf; *How To Spot A Concealed Handgun: 10 Signs Someone Is Carrying A Gun,* Everyday Carry Concealed, available at https://everydaycarryconcealed.com/how-to-spot-a-concealed-handgun-10-signs-someone-is-carrying-a-gun/; Calibre Press, *How to Spot Armed Suspects* (October 21, 2019), available at https://calibrepress.com/2019/10/how-to-spot-armed-suspects/. *See also* Calibre Press, *Detecting Armed Individuals* (online course),

10

Second, the plaintiff in *Seegars* did not aver that she would keep her registered firearm unlocked and loaded regularly, but only if she felt threatened. *Id.* As the government suggested, that contingency might never occur. *Id.* Plaintiffs here, on the other hand, have averred without qualification that they would carry their handguns on Metro if it were legal to do so. The only contingency is whether they choose to ride the Metro—which they all say they regularly do. *See* JA 68-75. So, while it was highly speculative that the plaintiff in *Seegars* would take action in violation of the trigger-lock law, Plaintiffs here have, without qualification, stated their intent to carry their guns on Metro, which would violate the Metro ban if it were not declared unconstitutional. Thus, contrary to Defendants' claim, this Court's treatment of the trigger-lock requirement in *Seegars* is not analogous to this case.

For the reasons stated above neither *Navegar* nor *Seegars* is a bar to finding that Plaintiffs here have standing to contest the Metro carry ban.[7]

---

available at https://onlinetraining.calibrepress.com/courses/detecting-armed-individuals/.

[7] Defendants fault plaintiffs for failing to distinguish *Parker* or *Ord v. District of Columbia,* 587 F.3d 1136 (D.C. Cir. 2009). AB at 23. As to *Ord,* the court found standing so there was no need to distinguish that case. As to *Parker,* as defendants admit, *id.*, that case raised the same standing issue as *Seegars* and the two cases are indistinguishable. *Id.* So, Plaintiffs' discussion of *Seegars* is equally applicable to *Parker.*

*Parker* is notable, however, for its discussion of standing concerning the trigger-lock issue and D.C.'s ban on carrying a handgun without a license—including at that time in the home. *See* 478 F.3d at 386. There this Court stated without further explanation, "Since D.C. Code § 22-4504 (prohibition against carrying a pistol without a

11

## II.    TO THE EXTENT *NAVEGAR* AND ITS PROGENY ARE APPLICABLE, THEY ARE NO LONGER GOOD LAW.

As this Court noted in *Seegars, Navegar* was questionable when decided. *See* 396 F.3d at 1255-56 (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)); *see also Booksellers,* 484 U.S. 383, 393 (Court held it sufficient for plaintiffs to allege "an actual and well-founded fear that the law will be enforced against them" without any additional requirement that the challenged law single out particular plaintiffs); *Doe v. Bolton,* 410 U.S. 179 (1973) (finding standing to challenge an abortion restriction despite lack of threat of enforcement); *Epperson v. Ark.*, 393 U.S. 97 (1968) (standing found despite law had never been enforced nor was there a threat of enforcement).[8] Since *Navegar,* the Supreme Court has

---

license) and D.C. Code § 7-2507.02 (disassembly/trigger lock requirement) would amount to further conditions on the [registration] certificate Heller desires, Heller's standing to pursue the license denial would subsume these other claims too." Yet, the record in *Parker* contains no evidence Mr. Heller separately sought as part of his denied firearm registration certificate to carry the gun at issue or to possess the gun without complying with the trigger-lock rule. *See Parker v. District of Columbia*, Case No. 03-cv-00213EGS, Doc. 1 at 3. The complaint simply stated, "Mr. Heller applied to defendant District of Columbia for permission to possess a handgun within his home but was refused." *Id.* The most logical reading of this Court's decision then is one has standing to contest conditions placed on a license or permit. Here D.C. Code § 7-2509.07(a)(6) is a condition on plaintiffs' CPL licenses in the same way this Court saw the trigger-lock and carry restrictions as conditions on Mr. Heller's denied gun registration certificate. By that analysis, if Mr. Heller had standing to contest those provisions, Plaintiffs have standing here to contest the Metro carry ban.

[8] Defendants ignore *Booksellers*, *Doe*, and *Epperson* entirely. *See generally* AB.

12

reinforced the "far more relaxed stance on pre-enforcement challenges than *Navegar* and *Seegars* permit." *Parker,* 478 F.3d at 375.

While Defendants distinguish *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), because it did not concern threatened government action, the key point of that case is that it clearly stated that one is not required to break the law to have standing to contest government action that infringes constitutional rights. *See* 549 U.S. at 128-29.

In *Susan B. Anthony List v. Driehaus,* 573 U.S. 149 (2014), the issue was whether a plaintiff had alleged a sufficiently imminent injury for standing to mount a pre-enforcement challenge to a law prohibiting false statements during a political campaign. *Id.* at 151-52. Specifically, the question was whether the plaintiff had suffered an injury in fact. *Id.* at 158. The Court pointed out that "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a "'*substantial risk*" that the harm will occur."'" *Id.* (citing *Clapper*, 568 U.S. at 414, n.5).

The Court explained: "One recurring issue in our cases is determining when the threatened enforcement of a law creates an Article III injury." *Id.* at 158. "Specifically, we have held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible

threat of prosecution thereunder.'" *Id.* at 159 (quoting *Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979)). The Court discussed several cases where it found standing, including *Babbitt, Booksellers*, and *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). *Id.* at 159-61. It was sufficient in *Babbitt* that the "plaintiffs' fear of prosecution was not 'imaginary or wholly speculative.'" *Id.* at 160 (citing *Babbitt,* 442 U.S. at 302). In *Booksellers*, "the 'pre-enforcement nature' of the suit was not 'troubl[ing]' because the plaintiffs had 'alleged an actual and well-founded fear that the law will be enforced against them.'" *Id.* at 160 (citing *Booksellers,* 484 U.S. at 393). In *Holder*, the plaintiffs claimed to have provided support to groups designated as terrorist organizations prior to the law's enactment and would do so in the future. *Id.* at 161. The Court found that "plaintiffs faced a '"credible threat"' of enforcement and '"should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."'" *Id.*

The Court ultimately found the *Driehaus* Plaintiffs had shown a sufficiently credible threat of future injury. Lacking in *Babbitt, Booksellers*, *Holder*, and *Driehaus* was any specific threat or singling out of the plaintiffs for future criminal enforcement.

This Court discussed *Driehaus* in *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017). It explained that the Supreme Court:

> clarified that a plaintiff can establish standing by satisfying *either* the "certainly impending" test *or* the "substantial risk" test. *See* 134 S. Ct.

14

> at 2341. The Court held that an advocacy group had standing to bring a pre-enforcement challenge to an Ohio statute prohibiting false statements during election campaigns. *See id.* at 2347. The holding rested in part on the fact that the group could conceivably face criminal prosecution under the statute, *id.* at 2346, but the Court also described the risk of administrative enforcement, standing alone, as "substantial," *id.* This was so even though any future enforcement proceedings would be based on a complaint not yet made regarding a statement the group had not yet uttered against a candidate not yet identified. *See id.* at 2343-45.

865 F.3d at 626-27. Even with those contingencies, the Supreme Court found standing. This Court further noted that since *Driehaus,* it had found standing based on a "substantial risk" of future injury. *Id.* at 627 (citing *In re Idaho Conservation Leagues*, 811 F.3d 502, 509 (D.C. Cir. 2016) (using "significant risk" and "reasonabl[e] fears" as the standard); *Nat'l Ass'n of Broadcasters v. FCC*, 789 F.3d 165, 181 (D.C. Cir. 2015) (using "substantial risk"); *Sierra Club v. Jewell*, 764 F.3d 1, 7 (D.C. Cir. 2014) (using "substantial probability of injury")).

Which brings us to *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), which is thoroughly incompatible with the *Navegar* line of cases. In *Whole Woman's Health,* eight Justices found standing to enjoin state licensing officials from enforcing a Texas law prohibiting abortion, despite the law providing that it could not be enforced by any state official and despite the absence of any evidence that the licensing officials had sought to enforce the law or expressed any intention to do so. Under the law, enforcement could only be done by non-state actors. Standing was predicated, nonetheless, on these officials having the authority to enforce the state's

15

licensing code, despite the lack of any evidence that these officials had indicated an intent to take action against the plaintiffs. The plaintiffs were thus not singled out for enforcement as the law applied to the entire set of potential abortion providers. There was no threat by the officials to enforce the law. And the law mandated that it could not be enforced by these state officials. If a case exists more removed from a *Navegar*-like "singling out" or "specific threat" requirement, we cannot think of it. Defendants understandably seek to distinguish *Whole Woman's Health,* but their efforts are unavailing.

First, Defendants assert that the case is distinguishable "because it involved a 'novel[]' law whose 'clear purpose and actual effect' was 'to nullify' Supreme Court precedent" and "'to evade judicial review' under *Ex parte Young.*" AB at 29 (citing 595 U.S. at 61 (Roberts, J., concurring in the judgment in part, dissenting in part) & 63 (Sotomayor, J., concurring in the judgment in part and dissenting in part)). We don't dispute the characterization of the Texas law. However, how Defendants think that relates to standing against the state licensing officials is unexplained. Chief Justice Roberts's and Justice Sotomayor's partial dissents were in the context of whether the state's attorney general and court clerks could be sued to enjoin enforcement of the Act. *Id.* at 60-61 (Roberts, CJ); *id.* at 62-70 (Sotomayor, J.) Those views, however, were not the decision of the Court and in any event do not support

16

a distinction between that case and this case with respect to the standing issue as to the licensing officials.

The best Defendants can say is that the licensing officials had "specific" disciplinary authority over the abortion providers. Okay, but ATF had specific regulatory authority over the plaintiffs in *Navegar*. That was insufficient to confer standing on the plaintiffs there to contest the copycat provision in *Navegar*. In any event, the Texas statute in *Whole Woman's Health* still prohibited the licensing officials from taking any action to enforce it. As we pointed out in our opening brief (at 26 n.19):

> The statute in pertinent part provided: "*Notwithstanding . . . any other law*, the requirements of this subchapter shall be enforced *exclusively* through . . . private civil actions." Tex. Health & Safety Code Ann. § 171.207(a) (emphasis added). The Act further provided: "No enforcement of this subchapter . . . in response to violations of this subchapter, may be taken or threatened by this state . . . or an executive or administrative officer or employee of this state." *Id.*

At best, Justice Gorsuch's opinion found standing "on provisions of state law that appear to impose a duty on the licensing-official defendants to bring disciplinary actions against [the providers] if they violate [the Act]." 595 U.S. at 47.  That was "enough at the motion to dismiss stage to suggest" that these officials "will be the target of an enforcement action." *Id.* at 48. Nothing in the case suggested any indication that such officials intended to enforce the Act, much less that the petitioners there had been singled out or threatened with such enforcement.

17

Defendants do not explain why the licensing officials' duty in *Whole Woman's Health* is any different from the duty MPD or Metro police have to enforce D.C. Code § 7-2509.07(a)(6). Given that whatever residual authority the Texas officials had to enforce the Act was expressly countermanded by the Act itself, at the very least it is fair to say the chances of those licensing officials taking action against the abortion providers was exceedingly remote. We suggest far more remote than the likelihood of MPD or Metro police arresting Plaintiffs for violating D.C. Code § 7-2509.07(a)(6) should they carry on Metro.

Defendants also point to wording in Justice Gorsuch's opinion that petitioners had alleged the Act had a direct effect on their day-to-day operations. AB at 30, citing 595 U.S. at 47-48. But how that relates to the likelihood of enforcement by *state* licensing officials as opposed to *private persons* is far from clear. Here each plaintiff averred he has altered his use of the Metro system because of D.C. Code § 7-2509.07(a)(6), resulting in inconvenience and increased costs for transportation. JA 117-126. Why is that any different from the situation in *Whole Woman's Health*?

Finally, Defendants point to the dissenting Justices' discussion that the Texas Act's "design guaranteed its own enforcement and ensured that the providers 'will be harassed with a multiplicity of suits,'" from "private bounty hunters." AB at 30 (citing 595 U.S. at 61, 62 (Roberts, J., concurring in the judgment in part, dissenting in part)). But again, that point regarding private enforcement reflects on the issue of

18

standing as to court clerks (and maybe judges), and not the state licensing officials. So, it is not a valid distinction. And in any event, the Supreme Court declined to find that the case was justiciable against either court clerks or judges.

Bottom line—Defendants have not shown a valid distinction between *Whole Woman's Health* and this case. Essentially, Defendants' argument is that *Whole Woman's Health* involved an egregiously unconstitutional state law that merited an exception to normal standing doctrine. The problem is that was not how the Supreme Court treated it, nor how it justified its decision. The Court found standing against state defendants with an arguable—but suspect—duty to enforce the law despite the lack of indication they intended to do so. The mere existence of their arguable duty was enough to present a credible threat of enforcement.

This Court is not free to ignore *Whole Woman's Health.* The standing decision there is irreconcilable with the *Navegar* line of cases. In light of *Whole Woman's Health,* the *Navegar* line of cases is no impediment to a conclusion that Plaintiffs here have standing.

Finally, Defendants seek to minimize the significance of Justice Gorsuch's principal opinion, which stated that the Court "has consistently applied" standing requirements "whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right." *Id.* at 50. AB at 30-31. Defendants nonetheless cite *Nat'l Press Photographers Ass'n v.*

19

*McCraw,* 90 F.4th 770, 782 (5th Cir. 2024), for the proposition that "'[S]tanding rules are relaxed for First Amendment cases so that citizens whose speech might otherwise be chilled by fear of sanction can prospectively seek relief.'" AB at 31. The Fifth Circuit, however, was referencing the "overbreadth" doctrine. *See id.* at 782-83 (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) ("'[P]recedent establishes that a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing.'")). Under that doctrine, persons have standing to challenge a regulation on its face where it is so overbroad or ambiguous as to create a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court, despite that the statute might have some constitutional applications. *See City Council of Los Angeles* v. *Taxpayers for Vincent v. Taxpayers*, 466 U.S. 89, 801 (1984).

The Court has explained this limited standing exception:

> This "overbreadth" doctrine has its source in *Thornhill v. Alabama*, 310 U.S. 88 (1940). In that case the Court concluded that the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected. . . This exception from the general rule is predicated on "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

466 U.S. at 799. The Court emphasized, however, that "[a]pplication of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613.

Here, in denying Plaintiffs' request for a preliminary injunction, the district court noted the standing exception in overbreadth cases and stated: "Given existing precedent, it is for the en banc D.C. Circuit or the Supreme Court, and not this Court, to decide whether that distinction matters outside the context of an overbreadth challenge." JA at 61. n.5. The problem, however, is that this Court has never explained why there should be a distinction between pre-enforcement standing in First Amendment versus non-First Amendment non-overbreadth cases, and Supreme Court decisions simply do not support such a distinction. *See, e.g.*, *Doe v. Bolton*, 410 U.S. 179 (1973).

## III. DEFENDANTS HAVE NOT REFUTED OUR SHOWING THAT THE *NAVEGAR* LINE IS INCONSISTENT WITH THE OTHER FEDERAL CIRCUITS.

Defendants dispute that the *Navegar* line of case is inconsistent with decisions of other federal circuits. Defendants are wrong.

Defendants cite *Nat'l Shooting Sports Found. v. Att'y Gen. of NJ.*, 80 F.4th 215, 219, 222 (3d Cir. 2023). But that was a facial challenge to a law relating to firearm marketing based on vagueness and with civil, not criminal, penalties. *Id.* at 223. The court found standing lacking as "the Attorney General [the only party who

21

could enforce the law] has disavowed prosecuting the Foundation or its members just for participating in 'lawful commerce,' which is all the Foundation has said it wants to do." *Id.* at 221.

Defendants also cite *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). That case was predominantly a ripeness case. *Id.* at 1138. Moreover, the court found fatal that the plaintiff had expressed only a "general intent to violate a statute at some unknown date in the future," which did "not rise to the level of an articulated, concrete plan." *Id.* at 1139. Finally, the Ninth Circuit in *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024), abandoned the analysis employed in *Thomas,* and adopted the test set forth in *Driehaus.*

Defendants also cite *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1124-31 (9th Cir. 1996), abrogated on other grounds by *Heller,* 554 U.S. 570. Like *Nat'l Shooting Sports Found*, the plaintiffs there failed to articulate concrete plans to violate the law. *Id.* at 1127. Nor had the "plaintiffs demonstrated that a 'prosecution is likely, or even that a prosecution is remotely possible,'" *id.* (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). That is certainly not the case here.

Nor does *NRA v. Magaw*, 132 F.3d 272, 281-83, 286-94 (6th Cir. 1997), support Defendants. Although that case followed *Navegar* in holding that manufacturers and dealers of firearms specified in the statute had standing, *id.* at

22

280-91, its treatment of standing on the copycat provisions of the statute was plainly directed to the vagueness issue and its determination that this part of the case was not ripe. *Id.* at 292-93. Moreover, that case and *San Diego Cty. Gun Rights* predate *Driehaus* by more than a decade and fail to evaluate standing under the test the Supreme Court made definitive in *Driehaus*: "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" 573 U.S. at 160.

Defendants ignore or distort the facts of the various circuit cases we presented to indicate that the other circuits' standing decisions are in conflict with the *Navegar* line of cases, and they completely ignore various district court decisions in conflict with *Navegar*. *See* AB at 36 n.2. Defendants allege *NYSRPA v. Cuomo*, 804 F.3d 242 (2d Cir. 2015), and *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 957-58 (9th Cir. 2014), did not analyze standing. While the Second Circuit in *Cuomo* did not discuss standing, it did not disturb the district court's finding of standing based on the plaintiffs' averments that, but for the ban, they would acquire more of the banned weapons. *See NYSRPA v. Cuomo*, 990 F. Supp. 2d 349, 358 (W.D.N.Y. 2013). A federal court of course has an obligation to ensure its jurisdiction, *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986), and the key point of

*Cuomo* is that the plaintiffs were not singled out or threatened with arrest prior to challenging the Second Amendment restrictions.

Contrary to Defendants' assertion, *Jackson* did discuss standing and found "the injury Jackson alleges is . . . that the Second Amendment provides her with a 'legally protected interest,'" *id.*, to purchase hollow-point ammunition, and that but for section 613.10(g), she would do so within San Francisco. 746 F.3d at 967. The court thus found the statute's prohibition "constitutes an injury in fact to Jackson, and she ha[d] standing to challenge it." *Id.* In the same way, the Metro ban constitutes an injury in fact to Plaintiffs. But for the prohibition, they would carry their licensed handguns on Metro.

Significantly, Defendants completely ignore the standing discussions in *Antonyuk v. Chiumento*, 89 F.4th 271, 333-37 (2d Cir. 2023), and *GeorgiaCarry.Org, Inc v. Georgia*, 687 F.3d 1244 (11th Cir. 2012), which are directly in conflict with *Navegar* and its progeny.[9] Nor do Defendants discuss *Peoples Rights Organization, Inc. v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998), which this Court in *Seegars* found in conflict with *Navegar*. *See* 396 F.3d at 1255. Indeed, Defendants have cited no case, post *Heller,* where a court outside the D.C.

---

[9] *See also Wolford v. Lopez*, 116 F.4th 959, 972 (9th Cir. 2024) (no indication of singling out or threatened enforcement against plaintiffs); *Nguyen v. Bonta*, No. 24-2036, slip op. at 6 (9th Cir. June 20, 2025) (same).

Circuit has required plaintiffs to show they have been singled out or threatened with arrest before they can challenge a Second Amendment restriction. The conclusion that this Circuit's standing doctrine is far off step with its sister circuits as well as with the Supreme Court is manifest.

Under the circumstances, application of an *Irons* footnote is appropriate here. This is a classic case where due to an intervening Supreme Court decision(s), *and* the combined weight of authority from other circuits, applying the *Navegar* line of cases would clearly be incorrect. *See Irons v. Diamond*, 670 F.2d 265, 267-68, 268 n.11 (D.C. Cir. 1981).

## CONCLUSION

The *Navegar* line of cases are both distinguishable from this case and contrary to Supreme Court precedent. If it was not clear before *Whole Woman's Health,* it is clear now. The judgment of the district court should be reversed.

July 14, 2025                          Respectfully submitted,

                                       */s/ George L. Lyon, Jr.*
                                       George L. Lyon, Jr.
                                       BERGSTROM ATTORNEYS
                                       1929 Biltmore Street, NW
                                       Washington, DC 20009
                                       (202) 669-0442 (phone)
                                       (202) 483-92667 (facsimile)
                                       *gll@bergstromattorneys.com*

                                       *Counsel for Plaintiffs-Appellants*

26

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with the type-volume and word-count limits of Federal Rule of Appellate Procedure 27(d) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,498 words.

2.      This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ George L. Lyon, Jr.*
GEORGE L. LYON, JR.

27

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 14th day of July, 2025, a true copy of the Appellants' Reply Brief was filed electronically with the Clerk of Court using the Court's CM/ECF system, which will send by email a notice of docketing activity to the registered Attorney Filer on the attached electronic service list.

*/s/ George L. Lyon, Jr.*
GEORGE L. LYON, JR.